**In the Matter of LACKOW BROTHERS, INC., Debtor.**

**Bankruptcy No. 81–00485–BKC–SMW.**

United States Bankruptcy Court,
S. D. Florida.

April 23, 1981.

Gunn, Venney & Buhler, Kreeger & Kreeger, Miami, Fla., for debtor.

John L. Britton, Francis L. Carter of Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for Walter E. Heller & Co. Southeast.

Phillips & Phillips, Miami, Fla., for Creditors' Committee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This contested matter came on to be heard upon the Debtor's Motion to Release Restraints on Inventory and For Use of Proceeds. The Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the pleadings and arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

LACKOW BROTHERS, INC., a Chapter 11 Debtor, filed a Motion to Release Restraints on Inventory and For Use of Proceeds. Walter E. Heller and Company Southeast, Inc. ("HELLER"), a creditor asserting a perfected security interest in the Debtor's inventory and accounts receivable, filed a Response to the Motion opposing the release sought by the Debtor, asserting that it was not being adequately protected, and in the alternative, requesting adequate protection.

The Debtor's Motion came before this Court for hearing on April 9 and April 10, 1981, counsel for the Creditors' Committee appearing and participating. At those hearings, the Court heard no evidence, and the parties stipulated on the record in open court that Heller would advance moneys to the Debtor to fund continued operations and obtain a lien on post-petition inventory and accounts receivable to secure such advances. The parties further agreed to file a written stipulation forthwith.

Heller's commitment to advance operating capital, however, was expressly contingent upon verification by an employee of the Debtor of certain representations to Heller by the Debtor, including the dollar amount of orders on hand. Those representations, however, proved inaccurate and could not be verified. No stipulation was filed, and the Debtor re-set its Motion for hearing.

The Debtor's Motion came on for hearing on April 21, 1981, on notice to Heller and to the Creditors' Committee. The matter was fully tried on that date, and the Court has considered the documentary evidence presented along with the testimony of various witnesses, including expert testimony. Although at trial, the Court indicated it would also admit into evidence and consider the partially completed deposition of one Sergio DuBois, an appraiser retained by Heller, for whatever weight such a deposition might be given under the circumstances, the Court has since reconsidered and reversed that initial decision and has not reviewed the DuBois deposition. These findings are based entirely on the evidence introduced at trial and do not rely on the DuBois deposition, nor on any proffer of evidence based on that deposition.

The Debtor's Motion admits that the Debtor owes Heller approximately $1,600,-000, and seeks authority for the Debtor to use in the operation of its business its inventory, some of which is at present under the joint control of the Debtor and Heller, and to use the proceeds of its accounts receivable, which are at present being collected by Heller. The Motion also questions whether Heller's lien on the Debtor's inventory and accounts receivable has been duly perfected. At trial, however, Heller fully documented its lien, and although the Debtor asserted the right to attack the validity of the Heller lien in the future, the parties proceeded on the assumption that Heller had a valid first lien on the Debtor's inventory and accounts receivable.

As Heller has objected to the use of inventory and proceeds by the Debtor, and as Heller has requested adequate protection, the burden falls squarely on the Debtor to show that Heller's interest as a secured creditor is adequately protected. 11 U.S.C. § 363(e). For the reasons which follow, this

Court finds as a matter of fact and concludes as a matter of law that the Debtor has failed to meet that burden, and the Debtor's request that it be allowed to use its inventory and proceeds collected on its accounts receivable, both encumbered by the Heller lien, must be denied.

The Debtor bases its claim that Heller is adequately protected solely on its contention that the value of the collateral pledged to Heller substantially exceeds the debt owed Heller, hence there is an equity cushion in the Debtor sufficient to protect Heller against loss. The Court need not consider whether Heller would be adequately protected by such a cushion, however, because the Debtor has failed to prove that such a cushion exists.

The Debtor is a manufacturer of relatively low priced jewelry items. Its inventory consists mainly of finished gold jewelry items, many of which are gold rings containing diamonds or colored stones, loose stones, and some unfinished jewelry items. Alvin Lackow ("LACKOW"), principal of the Debtor, testified that a complete inventory had been made under his supervision and assigned a value of approximately $1,439,000. Lackow was not offered as an expert. He readily admitted that his valuation to the extent of $1,050,000 was based upon a partial appraisal by one Ralph Wineman whose testimony was also offered by the Debtor. The balance of Lackow's estimate of value is based on a combination of compilations of invoice prices for consignment merchandise in the hands of customers, plus value estimates for inventory not appraised by Wineman.

The Court can give little weight to either Lackow's estimates, Lackow's compilations of inventory consigned to customers, or Lackow's adoption of values ascribed by Wineman to part of the inventory. Wineman's opinion of value must stand or fall on its own, and for the reasons which follow, this Court finds Wineman's testimony unconvincing.

Wineman testified that he is a former jeweler and buyer for a chain of retail catalog merchandise stores and is familiar with the costs of materials and labor which are components of the manufacture of jewelry of the type made by the Debtor. He is not a professional appraiser, nor has he practiced as such for a number of years. But even accepting Wineman as an expert qualified to give an opinion as to the value of the Debtor's inventory, the Court cannot give great weight to his opinion because of the cursory appraisal technique employed by him. Wineman readily admitted that he had examined only about ten percent (10%) of the portion of the inventory appraised by him; that he had accepted without verification the Debtor's weights for gold and for stones; that he had in many cases not verified the Debtor's item count for loose stones; that he had determined the quality of each lot of stones by examining at most one stone from the lot, indeed, in appraising some lots he had not even examined one stone; and that he obtained his stone prices based on certain allegedly authoritative but admittedly outdated supplier price lists. The Court can place little reliance on such testimony, even from an expert. Heller, of course, disputes the value offered by the Debtor, but has offered no evidence of its own in view of the Court's exclusion of the DuBois deposition proffered by Heller.

The value of the Debtor's accounts receivable is also in dispute. The Debtor insists that it has collectible accounts receivable in the amount of $457,535.40. On this point, however, George Chung, a Heller employee charged with liquidating accounts receivable, made a telephone survey of the Debtor's account debtors and personally contacted accounts constituting nearly eighty-nine percent (89%) of the value of the Debtor's accounts receivable as of April 1, 1981. Starting with a face amount of receivables of $571,000, Chung determined that approximately $381,000 were collectible, and then adjusting for approximately $100,000 in post-petition collections by Heller, determined that there were approximately $281,000 in collectible accounts receivable pledged to Heller. Suffice to say, Chung's testimony casts serious doubt on the Debtor's estimate of the value of its

accounts receivable, but it is clear that Heller would not be fully secured, even accepting the Debtor's own value for accounts receivable.

Saul Cohen, Heller's Vice President in charge of its Accounts Receivable Department, testified that Heller was owed, as of April 17, 1981, principal and interest totalling $1,545,856.98, a figure which was not disputed. Thus, even were the Court to give full credence to Wineman's estimate of the value of the Debtor's inventory he appraised, $1,050,000, and take at face value the Debtor's estimate of its accounts receivable, the value of assets pledged to Heller would total only $1,507,535.40, or some $38,000 short of the balance now owed Heller on which interest accrues daily. Without going so far as to hold that lack of equity in the Debtor is as a matter of law dispositive of the issue of adequate protection, here the Debtor's contention that Heller is adequately protected is posited solely on an equity cushion which has not been proved to exist. Accordingly, the Debtor has failed to show that Heller's is adequately protected and has demonstrated no basis for subjecting Heller to additional risk engendered by the further use of its collateral in the operation of the Debtor's business.

■ The Debtor's failure to show that Heller is adequately protected is in and of itself sufficient grounds to deny the Debtor's Motion. Even if this were not sufficient, however, the Court's decision is also influenced by evidence of misconduct on the part of the Debtor which was tantamount to fraud and which resulted in substantial injury to Heller. Briefly, it appears that the Debtor induced Heller to advance moneys against accounts receivable based on a representation that more than $200,000 in goods had been shipped to an account debtor, when most of the goods had not in fact been shipped, and the Debtor, in fact, had no account receivable remotely approximating the amount represented to Heller. It further appears that the Debtor obtained advances from Heller based on what were represented to be some $800,000 in firm open account sales, which were not, in fact, firm open account sales, but appeared to have been sales either on memo or under some other arrangement whereby the account debtor had return privileges with respect to the merchandise sold and shipped. Heller, of course, was never informed that the accounts receivable pledged by the Debtor were subject to such return privileges. Other testimony put on by Heller indicated an unexplained reduction of approximately $1,400,000 in the value of the Debtor's inventory, as represented by the Debtor to Heller, between March 19, 1981 and March 31, 1981.

Adequate protection, a pivotal concept within the framework of the Bankruptcy Code, is illustrated rather than defined with precision. 11 U.S.C. § 361. There are no set guidelines for what constitutes adequate protection and this Court has flexibility to determine what form of protection reflects the spirit and intent of § 361. *See, In Re Family Investments, Inc.,* 8 B.R. 572 (Bkrtcy.W.D.Ky.1981). Suffice to say, in view of the Debtor's history of misconduct and flagrant violation of rights conferred on Heller by its security agreements, an arrangement whereby the Debtor obtained unfettered use of any portion of its inventory or accounts receivable pledged to Heller could not fairly be said to afford Heller adequate protection.

It is the Debtor's duty to propose the method of protection. *In Re Family Investments, Inc., supra; see also, In Re Troy Industrial Catering Service,* 2 B.R. 521 (Bkrtcy.E.D.Mich.1980). Here, the Debtor asserts only that Heller is protected by the Debtor's equity cushion in Heller's collateral, but the Debtor has failed to prove by competent evidence that any such cushion exists. Accordingly, the Debtor's Motion must be in all respects denied.