In the Matter of LACKOW BROTHERS, INC., Debtor.

WALTER E. HELLER & COMPANY Southeast, Inc., a Louisiana corporation, Plaintiff,

v.

LACKOW BROTHERS, INC., a Florida corporation and William Roemelmeyer and Jeanette E. Tavormina, Co-Trustees for Lackow Brothers, Inc., Defendants.

Bankruptcy No. 81–00485–BKC–SMW.

Adv. No. 81–0386–BKC–SMW–A.

United States Bankruptcy Court, S. D. Florida.

Oct. 6, 1981.

Robert Venney, Miami, Fla., for debtor.

Britton, Cohen, Miami, Fla., for Walter E. Heller Co.

Irving Wolff, Miami, Fla., for trustees.

Louis Phillips, Miami, Fla., for Creditors Committee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be tried upon an Adversary Proceeding filed by Plaintiff, WALTER E. HELLER & COMPANY SOUTHEAST, INC., ("Heller"), against the herein Debtor, LACKOW BROTHERS, INC., ("the Debtor") and WILLIAM ROE-MELMEYER and JEANETTE E. TAVOR-MINA, as Co-Trustees for the Debtor ("the Co-Trustees"), seeking relief from the automatic stay imposed by 11 U.S.C. § 362. The Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the pleadings and arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Debtor is a manufacturer of relatively low-priced jewelry items. Its inventory consists mainly of gold jewelry items, many of which are rings containing small diamonds or colored stones, loose stones, and some unfinished jewelry items. Heller has a lien on the Debtor's inventory and accounts receivable. When the Debtor filed its Voluntary Petition under Chapter 11, Heller was in joint control with the Debtor of a substantial portion of the Debtor's inventory, and Heller was collecting the Debtor's accounts receivable. Soon after the case commenced, the Debtor filed a motion seeking the release and use of the jointly-controlled inventory and leave to use proceeds collected on its accounts receivable. After an evidentiary hearing, the Court, 10 B.R. 717, on April 23, 1981, entered Findings of Fact and Conclusions of Law and an Order in accordance therewith denying the Debtor's Motion on the ground that the Debtor had failed to discharge its burden to show that Heller would be adequately protected if the relief prayed for were granted. Soon thereafter, the Debtor ceased operating its business and the Court appointed the Co-Trustees upon the motion of creditors after notice and a hearing.

After the Co-Trustees' appointment, Heller filed the instant Adversary Proceeding, seeking a determination of the validity, priority and extent of its lien on the Debtor's inventory and accounts receivable, as well as relief from the automatic stay in order that it might obtain possession of the Debtor's inventory and exercise its rights as a secured creditor in the Debtor's inventory and accounts receivable. As grounds for such relief, Heller alleged that it is not being afforded adequate protection; that the Debtor has no equity in the property subject to its lien; and that the property is not necessary to an effective reorganization. Prior to trial, the Chapter 11 reorganization proceedings were converted to liquidation proceedings under Chapter 7, so the only issue to be determined here is adequate protection, which cannot be decided without first determining whether this Debtor's estate has an equity in the property subject to Heller's lien. As this is no longer a reorganization case, it can no longer be contended that the Debtor's inventory and accounts receivable are necessary to an effective reorganization. *See, In re Hart*, 5 B.R. 524 (Bkrtcy.N.D.Ga.1980).

At trial, Michael Turtletaub, a Heller Vice-President and account executive, testified that Heller was owed $1,385,487.42, plus some additional interest, then accrued but not yet computed. That amount was further substantiated by Heller's computer printouts admitted in evidence as business records. Also, admitted in evidence were a

$500,000.00 Promissory Note ("the Note"), an Inventory Loan Security Agreement securing the Note, and an Accounts Financing Security Agreement, all of even date; along with copies of various filed financing statements and modifications thereto, evidencing perfection of Heller's lien. At trial, the Co-Trustees did not challenge either the amount due Heller or the perfection of Heller's lien, and on the record presented, this Court finds that Heller is owed $1,385,-487.42, plus additional interest, and that it has a duly perfected first priority lien in the Debtor's inventory and accounts receivable.

Though not challenging the amount owed Heller, the Co-Trustees contend that Heller's secured claim is limited to $500,000.00 by a type-written provision of the Note, citing well-known principles of contract construction to the effect that an ambiguity is construed against the party drafting the contract and that, when contractual provisions are in conflict, specially prepared provisions, i.e., typewritten ones, take precedence over printed ones. The Co-Trustees argue that, notwithstanding express cross-collateral provisions in the Note and in both the Inventory Loan Security Agreement and the Accounts Financing Security Agreement, both Security Agreements contain an express provision that each Security Agreement and all other agreements between the same parties constitute one loan. It follows, the Co-Trustees argue, that the $500,000.00 limit typed on the Note takes precedence over printed portions of the Note and both Security Agreements, and thereby limits the amount of the Heller lien to $500,000.00.

The Co-Trustees' argument, however, is bottomed on a faulty premise. The rules of construction cited by the Co-Trustees are only applicable where the provisions of a contract are in conflict with one another. In determining whether such a conflict exists, other familiar principles of contruction must first be applied:

It is a cardinal rule in the construction of contracts that the intention of the parties thereto will be ascertained from a consideration of the whole agreement. The legal effect must be determined from the words of the entire contract. Likewise, the intention of the parties is to be determined from the entire contract. It is not enough to look to an isolated phrase or paragraph of the contract. All of the parts are to be compared, used, and construed with reference to each other.

The intent of the parties with respect to any feature of the contract must be determined from an examination of the whole contract. All of the provisions of a contract should be given their due meaning, and should be so construed as to render them consistent and harmonious if possible, effect should be given to each provision if that can reasonably be done. 11 Fla.Jur.2d, *Contracts* § 121 (footnotes omitted).

Applying the foregoing principles, the parts of the three relevant instruments, read together, constitute a consistent and harmonious whole, and the Court finds no conflict between the typewritten and printed provisions. Each of the Security Agreements admitted into evidence contains the following language:

All loans and advances by Heller to borrower under this agreement and all other agreements constitute one loan, and all indebtedness and obligations of borrower to Heller under this and under all other agreements, present and future constitute one general obligation secured by collateral and security held and to be held by Heller hereunder and by virtue of all other agreements between borrower and Heller now and hereafter existing.

The Security Agreements clearly contemplate that Heller may make numerous commercial loans to a single borrower and that any collateral pledged by the borrower to Heller shall stand as security for all such loans. Neither Security Agreement is limited by its terms to a single note, and each expressly secures all advances, whether or not evidenced by notes. Finally, a letter agreement executed by Heller and the Debtor, dated December 10, 1980, and admitted in evidence as part of Plaintiff's Exhibit # 2, provides:

Heller agrees that the Line of Credit granted Lackow is $1,500,000 and such Line of Credit is subject to the terms and conditions of the Accounts Financing Security Agreement and Inventory Loan Security Agreement both dated 9/24/80. Accordingly, the Court having carefully considered the relevant documents admitted in evidence, finds and concludes that, in conformity with the clear intent of the parties, the Debtor's inventory stands as security not only for advances on the inventory loan, which the record indicates had an outstanding balance of $236,479.00 as of April 1, 1981, but also as security for Heller's advances against accounts receivable, which exceeded more than $1 million.

This Court further finds the Co-Trustees' reliance on *Safe Deposit Bank and Trust Co. v. Berman*, 393 F.2d 401 (1st Cir. 1968) misplaced. In that case, a single security agreement was expressly limited by its own terms to securing a specific note of even date, which was later paid in full. Accordingly, the Circuit Court of Appeals "reluctantly" affirmed a judgment of the Bankruptcy Court, also affirmed by the District Court, that the security agreement did not secure other subsequent notes held by the same creditor, notwithstanding language in the initial note and the subsequent notes purporting to extend the security agreement to cover additional obligations. The Circuit Court framed the factual basis for its holding that subsequent notes were not secured as follows, "The problem is created by a security agreement which is confined by its terms to the specific note it secures . . ." 393 F.2d at 402. In the instant case, however, there is not one security agreement, but two, each of which expressly provides for cross-collateralization and for security for other and future advances, whether or not evidenced by notes. Here, the Inventory Loan Security Agreement is not expressly limited to the specific Note of even date, and the Note here at issue has never been fully paid. Accordingly, this case falls well outside the narrow facts on which the decision in *Safe Deposit Bank and Trust* is grounded. This Court, therefore, rejects the Co-Trustees' argument and finds and concludes that Heller has a valid, duly perfected lien on inventory and accounts receivable to the full extent of the outstanding and unpaid debt owed by the Debtor.

Having determined the amount of Heller's lien, the Court must next determine whether Heller is adequately protected. The pivotal question of fact is the current value of the inventory and accounts receivable securing Heller's lien. Only Heller presented evidence concerning value. Sergio DuBois, an expert witness having substantial experience as an appraiser, buyer and manufacturer of jewelry items, testified that he had made a thorough appraisal of the Debtor's inventory, which required 36 hours of work. DuBois had the help of an assistant, but appraised 90 to 95 percent of the inventory himself. Weighing all gold items, either singly or in lots, and appraising loose stones from each lot using what appear to the Court to be reasonable random sampling techniques, DuBois determined the value of the gold content of jewelry items by weight, adding values for stones determined by weight and quality, then adding a labor factor equal to from 25 to 33 percent of the gold content value. On that basis, DuBois arrived at a wholesale value for the Debtor's inventory of $862,000.00, as of April 3, 1981, when gold cost approximately $500.00 per ounce.

As of the time of trial, however, the price of gold had declined to approximately $400.00 per ounce. DuBois reappraised some of the inventory on the eve of trial and concluded that, were he to reappraise the entire inventory and evaluate each piece individually, rather than by lots, his opinion of the current value of the inventory would not vary from his April valuation by more than 5 to 10 percent. After careful consideration, the Court accepts DuBois' testimony and finds the value of the Debtor's inventory to be not more than $862,000.00, its wholesale value.

■ The Court further finds and concludes that the wholesale value of the Debtor's inventory is the correct reference value

for purposes of determining whether Heller is adequately protected, for Heller is not in the business of retailing jewelry items and could not be expected to derive full retail value from the inventory. *In re Thomas Parker Enterprises, Inc.,* 10 B.R. 783, 788 (Bkrtcy.D.Conn.1981) *In re Crockett,* 3 B.R. 365 (Bkrtcy.N.D.Ill.1980) *In re Adams,* 2 B.R. 313 (Bkrtcy.M.D.Fla.1980) Where, as here, the Debtor is in liquidation under Chapter 7, attempts at reorganization having failed, there can be no pretense that a "going concern value" is appropriate.

Although the remaining uncollected accounts receivable held by Heller have a face value of $195,000.00, George Chung, a Heller employee in charge of collecting accounts receivable, estimated their maximum collectible value to be $15,000.00 to $20,000.00. Alvin Lackow, President of the Debtor, testified that the uncollected accounts receivable might have a remaining collectible value of $60,000.00. The Co-Trustees presented neither testimony nor argument on the value of the uncollected accounts. Therefore, even accepting the higher figure estimated by Alvin Lackow, the value of the inventory and accounts receivable pledged to Heller to secure its lien cannot exceed $922,000.00.

The Co-Trustees, as the party opposing relief from stay, have the burden of proving that Heller is adequately protected. 11 U.S.C. § 362(d) and (g); *In re Anchorage Boat Sales, Inc.* 4 B.R. 635 (Bkrtcy.E.D.N.Y. 1980); *In re Hanson Dredging, Inc.,* 6 B.R. 230, 232 (Bkrtcy.S.D.Fla.1980). It is also the Debtor's burden to propose the method of adequate protection. *In re Princess Baking Corp.,* 5 B.R. 583 (Bkrtcy.S.D.Cal.1980); *In re Family Investments, Inc.,* 8 B.R. 752 (Bkrtcy.W.D.Ky.1981).

The Court having found that Heller is owed $1,383,004.79, secured by collateral worth at most, $920,000.00, the Court finds and concludes that there is no equity in the Debtor's estate in the Debtor's inventory and accounts receivable. The Co-Trustees having proposed no method of adequate protection, the Court finds and concludes that Heller is not adequately protected and

that Heller would be substantially prejudiced by being stayed further from realizing on the remaining value of its security. Accordingly, this Court must grant Heller the relief prayed for and finds and concludes that Heller is entitled to immediate possession of the Debtor's inventory, and that neither the Debtor nor the Trustees have any further rights in the Debtor's inventory or accounts receivable.