In re EL PATIO, LTD., a limited partnership, Debtor.

IMPERIAL BANK, a California corporation, Plaintiff,

v.

EL PATIO, LTD., a limited partnership, Defendant.

Bankruptcy No. LA 80–06512–RM. Adv. No. LA 80–1525–RM.

United States Bankruptcy Court, C. D. California.

Sept. 26, 1980.

---

Alan Pedlar of Stutman, Treister & Glatt, Los Angeles, Cal., and Herman Palarz of Katz, Granoff & Palarz, Beverly Hills, Cal., for plaintiff, Imperial Bank.

Nathan Goller of Goller, Gillin & Menes and Peter R. Stoll, Los Angeles, Cal., for debtor and defendant, El Patio, Ltd.

## MEMORANDUM OPINION

RICHARD MEDNICK, Bankruptcy Judge.

### FACTS

El Patio, Limited, a limited partnership (Debtor) is in the business of purchasing apartment houses and converting them to condominiums through subdivision procedure. The only property presently owned for subdivision is a 34–unit apartment building located in Santa Monica, California. The plaintiff, Imperial Bank (Bank) holds a one year promissory note dated May 25, 1979, in the amount of $3,500,000.00 secured by a first deed of trust on the property.

It is Debtor's intent to subdivide the apartment building by transforming it into condominium units to be individually sold to the general public. A majority of the units were reserved for sale and the conversion was well on its way to completion when the project was suspended by the Santa Monica Permanent Rent Control Board based on the passage on April 10, 1980, of the Santa Monica Rent Control Charter Amendment. The Debtor challenged the constitutionality of that decision in the State courts. A Superior Court ruling unfavorable to Debtor was affirmed by the Court of Appeal.

On appeal, the California Supreme Court on April 24, 1980 directed the Court of Appeal to issue an Alternative Writ of Mandate which was issued on May 6, 1980 to the City of Santa Monica, its City Council and the Permanent Rent Control Board. The purpose of that Writ was to require that the Permanent Rent Control Board decision be set aside or show cause why Debtor should not be allowed to proceed with the condominium conversion. The decision halting the condominium conversion was not set aside, and a hearing before the California Court of Appeal was held on June 24, 1980. A ruling is expected within 90 days from that date.

On July 8, 1980, Debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code. On July 11, 1980, the Bank filed a complaint requesting relief from the automatic stay pursuant to 11 U.S.C. § 362(e). The complaint seeks leave to proceed with the foreclosure sale which had been set for July 9, 1980, pursuant to the terms of the deed of trust. The complaint alleges that: 1) Debtor has defaulted in its obligations under the note; 2) Debtor has no equity in the property; 3) the property is not necessary to an effective reorganization; 4) the Bank lacks adequate protection for its interest in the property; and 5) the deed of trust provides for the assignment of rents.

On July 28, 1980, Debtor answered denying the allegations of lack of equity and adequate protection, and further denying amounts alleged as due and owing to the Bank pursuant to the promissory note. In addition, Debtor asserted as affirmative defenses that 1) the Bank knew at the time it made the loan that the value of the property as an apartment house was less than the amount of the loan, for which it charged a loan fee commensurate with the risk; and 2) that a favorable ruling reversing the effect on the debtor of the Santa Monica Rent Control Charter Amendment would allow Debtor to proceed with its project and was imminently expected. (A third affirmative defense was waived for purposes of the within adversary proceeding only.)

The parties waived their rights to a preliminary hearing under § 362(e), and the final hearing under 11 U.S.C. § 362(d) was commenced on August 11, 1980, and concluded on August 20, 1980. The stay was continued in effect pending this Court's decision. 11 U.S.C. § 362(d); 11 U.S.C. § 105.

It was stipulated that the value of the property as an apartment house ranges from $2,040,000.00 to $2,500,000.00, and that

the value of the property after obtaining all required regulatory approvals necessary to convert the units to condominiums would be no less than $5 million and claimed by the debtor to be $6 million.

## DEBTOR'S DEFAULT

The parties have stipulated that as of August 11, 1980, Debtor is in default in the amount of $3,941,196.29 which includes interest from October 1, 1979. In addition, the Bank asserts late charges of $14,700.00, trustee's fee and costs, reasonable attorneys' fees, and interest at the rate of $1,748.27 per day beyond August 11, 1980. The Bank further asserts that unpaid property taxes for the 1979–80 tax year have accrued against the property in the amount of $11,757.06 plus penalties. Evidence was not produced to establish or controvert these amounts.

Section 362(d) requires the Court to grant relief from the stay if the creditor is not adequately protected or if the debtor has no equity in the property and the property is not necessary for the debtor's reorganization. After the creditor requests the Court to lift the stay, its continuance shall be granted only upon the determination that adequate protection in some form is or will be provided. 11 U.S.C. § 362(d).

## DEBTOR'S EQUITY AND POTENTIAL REORGANIZATION

■ For purposes of this § 362(d) hearing only, the value of the property is as an apartment house since the right to convert to condominiums has not yet been established. That value is $2,040,000.00, which was the value of the property on the date of the petition and the dates of this hearing. Evidence was introduced by Debtor showing that the property has increased in value as an apartment house during the past year despite the effects of rent control, but which failed to show that the value will continue to increase.

The Bank introduced evidence to show that because rent control is in effect in Santa Monica, the value of the property as an apartment house will decrease at the end of a year's period at a rate of not less than 2% per annum and possibly more. It was not shown that the property is decreasing at any rate on a weekly or monthly basis. Thus, for the next 120 day period, the Court finds there will be neither a decrease nor an increase in the value of the security. The finding of this Court herein as to the value of the property and its increase or decrease for the next 120 days is, upon proper showing, subject to change in any hearings for extensions of the stay beyond the 120 day period.

Since the debt to the Bank is in excess of $3.9 million, there is no equity in the property for the Debtor at this time. The effects of 11 U.S.C. § 506(a) gives the Bank a secured claim for $2,040,000.00 and a general unsecured claim for the balance due on the loan. See also, 11 U.S.C. § 1111(b)(2).

■ Testimony revealed that a ruling which would permit Debtor to proceed with the condominium conversion is expected within 90 days from the date of the hearing before the California Court of Appeal. Absent further State court appeals, a favorable ruling now may result in Debtor's reorganization within a relatively short period of time. It was shown that except for the effects of the decision of the Rent Control Board and the delinquencies on the loan, the Debtor has the ability to complete the conversion. Debtor's witness testified that it would take approximately 7 months from the date of a favorable final order of the State courts to complete the conversion and marketing of the units. Debtor should be permitted to determine if such potential is capable of realization.

If the condominium conversion is allowed to proceed, the property will be worth between $5 million and $6 million, in which event sufficient equity would be created to satisfy the Bank's claim in full including interest, penalties, costs, and attorneys' fees, as well as the claims of all other creditors. A determination by the California courts in favor of the Debtor would appear to be equally advantageous to the Bank and the Debtor. This court has the

duty to preserve whatever equities the Debtor may have not only for rehabilitation purposes, but to protect the rights of all creditors in the potential fund. *In re Garrett*, 203 F.Supp. 459 (N.D.Ala.1962); *Matter of Aurora Cord and Cable Co., Inc.*, 2 B.R. 342 (Bkrtcy.N.D.Ill., 1980). Without the property, there is nothing to reorganize. Thus, the property is essential to Debtor's effective reorganization.

## ASSIGNMENT OF RENTS

■ The deed of trust contains an absolute assignment of rents clause. Such clauses are valid and enforceable in Bankruptcy. *In re Ventura–Louise Properties*, 490 F.2d 1141 (9th Cir. 1974). No evidence was presented as to the amount of rent currently being produced and collected. The property requires maintenance on a monthly basis to protect the security, although evidence was not introduced as to the cost of such maintenance. The debtor may use a portion of this rental to maintain the property. 11 U.S.C. § 506(c). See also, *American Trust Co. v. England*, 84 F.2d 352 (9th Cir. 1936). The Bank is entitled to the rent in excess of the amount needed to maintain the property.

## ADEQUATE PROTECTION

The Bank asserts that it lacks adequate protection for its interest in the property. There is no equity cushion here that would provide such adequate protection. 2 Collier on Bankruptcy (15th ed.) § 361.01. See also, *In re Rogers Development Corp.*, 2 B.R. 679, 5 B.C.D. 1392 (Bkrtcy.1980).

■ The Code proposes three non–exclusive methods of providing adequate protection to a creditor with a security interest in the property of the debtor. Section 361(1) [1] suggests that periodic cash payments to the creditor may provide adequate protection to the extent that the automatic stay results in a decrease in the value of the security. This concept is derived from *In re Bermec Corp.*, 445 F.2d 367 (2d Cir. 1971) where the secured creditor was adequately protected by payments sufficient to preserve the status quo with respect to the value of the creditor's interest in the property. See also, *In re Yale Express System*, 384 F.2d 990 (2d Cir. 1967). Since the value of the property will not decrease for the next 120 days, preservation of the value for that period would appear only to require prorated payments for accruing taxes and penalties, since accruing property taxes as a lien ahead of the Bank erodes the value of its secured interest. In addition, adequate assurance that the property is properly insured and maintained is appropriate since that is, in fact, one of the duties of a debtor in possession.

Section 361(2) [2] is inapplicable here since that section proposes an additional or replacement lien as a form of adequate protection to the extent that the stay results in a decrease in the value of the secured creditor's interest.

Section 361(3) [3] has been termed the "catch all." It provides the Court with the flexibility to formulate adequate protection on a case by case basis. House Report No. 95–595, 95th Cong. 1st Sess. (1977) at pp. 338–40.

---

1. 11 U.S.C. § 361(1) reads as follows:

   When adequate protection is required under sec. 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by–

   (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a *decrease in the value of such entity's interest in such property*; (emphasis added.)

2. 11 U.S.C. § 361(2) reads as follows:

   (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a *decrease in the value of* such entity's interest in such property; (emphasis added.)

3. 11 U.S.C. § 361(3) reads as follows:

   (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the *indubitable equivalent* of such entity's interest in such property. (emphasis added.)

Payment of interest on a loan during the continuation of a stay is normally appropriate and is provided for in the Code only where a claim is oversecured. 11 U.S.C. § 506(b).

## EQUITABLE CONSIDERATIONS

At the time the Debtor and the Bank contracted, the condominium conversion had already been halted. In effect, the Bank bargained to share the entrepreneurial risk for one year. At the date of the hearing, the Bank had exactly that which it bargained for—collateral valued at almost $1.5 million less than the loan it secured. The Bank would obtain that collateral now except for the effects of the § 362(a) stay.

Material impairment of collateral without just compensation is constitutionally impermissible. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). However, where the stay results in no diminution in the value of the security, no collateral impairment has occurred. *Continental Illinois National Bank v. Chicago, Rock Island and Pacific Railway*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); *RFC v. Kaplan*, 185 F.2d 791 (1st Cir. 1950); *In re Blazon Flexible Flyer, Inc.*, 407 F.Supp. 861 (N.D.Ohio 1976); *In re American Kitchen Foods, Inc.*, 2 B.C.D. 715 (1976).

The Bankruptcy Court is both a court of law and a court of equity. 28 U.S.C. § 1481. "There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). See also, 11 U.S.C. § 105. In this case and on these facts, it would be inequitable for the Bank to bear the full entrepreneurial burden beyond the period for which it bargained. Such would be the case if the reorganization is unsuccessful during the next 120 days. Under the unique circumstances presented here, the amount of 2% per annum (on the amount of the allowed secured claim) appears an equitable compensation for the Debtor to pay while the Bank is further restrained and during which time the Debtor incurs no additional risk.

This memorandum opinion shall constitute findings of facts and conclusions of law pursuant to Bankruptcy Rule 752(a).