**In re VIRGINIA FOUNDRY
COMPANY, INC., Debtor.**

**UNITED VIRGINIA BANK, Appellant,**

v.

**VIRGINIA FOUNDRY COMPANY,
INC., Appellee.**

**Bankruptcy No. 7–80–00470.**

United States District Court,
W. D. Virginia.

Feb. 20, 1981.

John D. Copenhaver, Douglas W. Kielkopf, Roanoke, Va., for appellee.

G. Franklin Flippin, Roanoke, Va., for appellant.

Ross C. Hart, Roanoke, Va., for Collector's Committee.

## MEMORANDUM OPINION

TURK, Chief District Judge.

This is an appeal arising out of a Chapter 11 proceeding in the bankruptcy court. Appellant, United Virginia Bank, a secured creditor, challenges a June 2, 1980, order and memorandum opinion of the bankruptcy court in which that court determined that appellant's attorney's fees were to be allowed in accordance with Title 11 U.S.C. § 503 and Rule of Bankruptcy Procedure 219 and that appellant is "adequately protected" under § 362.[1] The court finds both issues to have been wrongly considered by the bankruptcy court, and, accordingly, reverses that decision and remands for further consideration.

Appellant has advanced the debtor, Virginia Foundry Company, Inc., $400,000.00. That loan is evidenced by a promissory note dated October 9, 1978, payable on demand, with interest at 9½ per annum and is secured by a deed of trust on two parcels of land, a perfected security interest in Virginia Foundry's inventory and accounts receivable, an assignment of a $100,000.00 policy insuring the life of Virginia Foundry's president, and a pledge of all Virginia Foundry's outstanding corporate stock. According to the terms of the note, Virginia Foundry was liable for all expenses of collecting the debt "including an 18% attorney's fee."

Subsequent to the loan, the value of the Bank's collateral fell, Virginia Foundry's financial condition deteriorated, and it failed to pay real estate taxes on property covered by the deed of trust. In July of 1979, to protect its interest, appellant demanded payment of the note. Payment was not made and a default was declared. Payment was again demanded and default was again declared in December of 1979 and in April of 1980. On April 30, 1980, Virginia Foundry filed its Chapter 11 petition under the Bankruptcy Code. Appellant, in turn, sought relief from the automatic stay of Title 11 U.S.C. § 362(a) maintaining that it was not "adequately protected" under § 362(d)(1). In a proposed order appellant and Virginia Foundry set forth a plan which they agreed provided for adequate protection. However, because the plan, in part, called for an increase in interest to a current rate it was objected to by the creditor's committee.

As of June 2, 1980, the balance remaining on the promissory note was $260,000.00 plus interest and costs. On that date, the bankruptcy court set forth a plan which it found to provide "adequate protection" under § 362(d)(1) but which did not allow interest at a current or market rate because of undue prejudice to the general creditors. In that same order the bankruptcy court stated "that any costs, charges, and fees incurred or claimed by United Virginia Bank" would be paid upon "proper applica-

---

1. United Virginia also assigned as error the failure of the bankruptcy court to declare the demand note in default. It is clear from the record that the note was in fact in default prior to the time that Virginia Foundry filed its bankruptcy petition. The bankruptcy court referred in part to an installment note, speaking of the right to cure defaults. From the record, however, it appears that the demand note was in default, a default which was not subject to being cured. Accordingly, insofar as the bankruptcy court's opinion may be read to imply that a default had not occurred, or that the default was cured, it is reversed.

tion ... pursuant to Rule *219* of Federal Bankruptcy Rules and 11 U.S.C. 503."

## I. COSTS, EXPENSES, AND ATTORNEY'S FEES

■ The bankruptcy court was clearly in error when it determined that costs, charges, and attorney's fees were to be paid in accordance with Title 11 U.S.C. § 503. That section applies to the allowance of costs, expenses, and fees for services rendered in the administration of a bankruptcy estate. The allowance of costs, expenses, and fees, including attorney's fees, to a secured creditor, with a provision for such in his secured agreement, on the other hand, is governed by Title 11 U.S.C. § 506(b) which reads as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

If the reasonableness of the fees is to be determined in the bankruptcy judge's discretion in accordance with federal common law, the error is of little significance to the appellant in the present case. However, if determined in accordance with state law, the error may be of greater consequence.

■ Under the Bankruptcy Act of 1898, as amended, the allowance of attorney's fees provided for in a secured undertaking is determined in accordance with state law. *In re Crafty Fox, Ltd.*, 475 F.Supp. 634 (W.D.Va.1979).[2] This results from the fact that under state law such fees are as much a part of the debt as the principal and interest. *See University of Richmond v. Stone*, 148 Va. 686, 139 S.E. 257 (1927); *Schwab v. Norris*, 217 Va. 582, 231 S.E.2d 222 (1977). In bankruptcy proceedings, the extent and nature of property rights are determined in accordance with state rather than federal common law. *See Butner v. U. S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). This point was emphasized by the Supreme Court in the recent case of *Butner v. U. S., supra.* That case, which arose out of a bankruptcy proceeding in North Carolina, involved the question of whether North Carolina law, which gives a mortgagee the right to rents and profits after default, must be applied by the bankruptcy court, or a federal rule of equity. In finding that state law controlled the court stated:

> The constitutional authority of Congress to establish "uniform laws on the subject of bankruptcies throughout the United States" would clearly encompass a federal statute defining the mortgagee's interest in the rents and profits earned by property in a bankrupt estate. But Congress has not chosen to exercise its power to fashion any such rule. The Bankrupt-

**2.** In the case of *In re Crafty Fox, Ltd.*, 3 B.R. 657 (Bkrtcy.W.D.Va.1980), the bankruptcy judge held that bankruptcy courts have the power to reduce "stipulated fees to a reasonable compensation for the services actually rendered and covered by the stipulation ...." 3 B.R. at 667. In reversing that decision, this court held that such fees were to be reduced only in accordance with state law. *In re Crafty Fox, Ltd.*, 475 F.Supp. 634 (W.D.Va.1979). In considering the matter on remand in accordance with this court's directive the bankruptcy court gratuitously pointed out that such fees had always been determined in accordance with federal law. For this proposition the bankruptcy court relied primarily upon the decision of the Fourth Circuit in *Citizens National Bank of Orange v. Waugh*, 78 F.2d 325 (4th Cir. 1935). That decision, indeed, held that federal

courts are not "bound to follow the decisions of the courts of the state in such matters." The court of appeals decision, however, was dressed in the garb of and relied upon *Swift v. Tyson*, 41 U.S. 1, 16 Pet. 1, 10 Lawyer's Ed. 865 (1842). *Swift*, of course, was overruled by *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 814, 82 L.Ed. 1188 (1938). As Charles Allen Wright has stated:

> It is impossible to overstate the importance of the *Erie* decision. It announces no technical doctrine of procedure or jurisdiction but goes to the heart of relations between the federal government and the states, and returns to the states a power that had for nearly a century been exercised by the federal government.

Wright, *Law of Federal Courts*, § 55 (3d Ed. 1976).

cy Act does include provisions invalidating certain security interests as fraudulent, or as improper preferences over general creditors. Apart from these provisions, however, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." [Citation omitted.] The justifications for application of state law are not limited to ownership interest; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

440 U.S. at 54–55, 99 S.Ct. at 918.

It could hardly be maintained that appellant's right to attorney's fees, costs, and expenses is less of a property right under Virginia law than the mortgagee's right to rents and profits is a property right under North Carolina law. Those expenses, costs, and fees would, therefore, be determined in accordance with state law if this case had arisen under the Bankruptcy Act of 1898, as amended. The present case arises under the Bankruptcy Reform Act of 1978, however, and the question presented is whether Title 11 U.S.C. § 506(b) of the new Bankruptcy Code permits a bankruptcy court to determine the reasonableness of such fees, costs, or charges provided under the secured agreement in accordance with federal and not state law. The court holds that it does not.

According to Senate Report No. 95–989, 95th Cong., 2d Sess., subsection (b) of § 506 was a codification of the law under the Bankruptcy Act of 1898, as amended:

Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees (including attorney's fees), costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.

Id. at 68, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854. The House Report contains language to the same effect. H.R. Rep.No.95–595, 95th Cong., 1st Sess., at 356–357. House Bill 8200 provided that such fees, costs, and charges were to be allowed "to the extent collectible under applicable law." Senate Bill 2266 did not contain the "to the extent collectible under applicable law" language, however, and in compromise it was ultimately dropped by the House. In explaining the amendment to the House Bill, Rep. Don Edwards stated:

Section 506(b) of the House Amendment adopts language contained in the Senate Amendment and rejects language contained in H.R. 8200 as passed by the House. If the security agreement between the parties provides for attorney's fees, it will be enforceable under title 11 notwithstanding contrary law, and is recoverable from the collateral after any recovery under section 506(c).

124 Cong.Rec. 9–98 (1978). By deleting the language contained in the House Bill an anomalous situation arises. According to both House and Senate documents, Congress intended to codify the law in this area which existed under the Bankruptcy Act of 1898, as amended. As the Supreme Court explained in Butner v. U. S., supra, which, as previously stated, was decided under the 1898 Act, as amended, a "federal bankruptcy court should take whatever steps are necessary to insure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy has ensued."[3] 440

3. In Butner v. U. S., 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Third and Seventh Circuits had adopted a federal rule of equity that afforded the mortgagee a secured interest

U.S. at 56, 99 S.Ct. at 918. Yet, in deleting the language of the House conditioning the entitlement to interest, costs, and reasonable fees upon collectibility under local law, the Congress missed the mark in its objective to codify the prior law.

■ Accordingly, the following synthesis of congressional intention appears. When a secured agreement provides for stipulated interest, fees, costs or charges, such are to be determined in accordance with state law. However, even if such interest, fees, costs or charges are not allowable under state law, they may be allowed as a matter of federal law by the bankruptcy court.

■ In the present case appellant has a secured claim which calls for "all the expenses incurred" in its collection, "including an 18% attorney's fee." To the extent that those expenses and fees are found to be allowed and reasonable under state law, they shall be granted by the bankruptcy court.

## II. ADEQUATE PROTECTION

■ The court finds that the bankruptcy court failed to adequately protect appellant's secured interest. While the bankruptcy court took action which may have "adequately secured" appellant's claim, it failed to afford appellant the economic equivalent of the benefit of its bargain. A secured creditor is entitled to relief from the automatic stay of § 362 if "adequate protection" of his property interests cannot

be arranged. Title 11 U.S.C. § 362(d). Section 362 does not define "adequate protection." The term is found in the Bankruptcy Act of 1898, as amended, however, under the so called "cram-down" provisions of § 216(7) of Chapter X, Title 11 U.S.C. § 616, and § 461(11) of Chapter XII, Title 11 U.S.C. § 861. It was, likewise, found in subsection (b)(5) of section 77B, the predecessor to Chapter X. In construing the term in the case of *In re Murel Holding Company*, 75 F.2d 941 (2d Cir. 1935), Judge Learned Hand stated:

> In construing so vague a grant, we are to remember not the underlying purposes of the section, but the constitutional limitations to which it must conform. It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

75 F.2d at 942.

While not defined by Title 11 U.S.C. § 362, § 361 sets forth examples of how to provide for adequate protection.[4] As stated

in the rents even if state law would not recognize any such interest until after foreclosure. The Supreme Court rejected that approach as this court has previously explained. In rejecting the Third and Seventh Circuits' approach the Supreme Court stated:

> In support of their rule, the Third and Seventh Circuits have emphasized that while the mortgagee may pursue various state-law remedies prior to bankruptcy, the adjudication leaves the mortgagee "only such remedies as may be found in a court of bankruptcy in the equitable administration of the bankrupt's assets." [Citation omitted.] It does not follow, however, that "equitable administration" requires that all mortgagees be afforded an automatic security interest in rents and profits when state law would deny

> such an automatic benefit and require the mortgagee to take some affirmative action before his rights are recognized. *What does follow is that the federal bankruptcy courts should take whatever steps are necessary to insure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.* This is the majority view which we adopt today. (Emphasis added.)
> 440 U.S. at 56, 99 S.Ct. at 918.

**4.** Title 11 U.S.C. § 361 in its entirety provides: When adequate protection is required under sections 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
(1) requiring the trustee to make periodic cash payments to such entity, to the extent

in the House Report, "[t]he purpose of [§ 361] is to illustrate means by which it may be provided and to define the contours of the concept." H.R.Rep.No.95–595, 95th Cong., 1st Sess. at 338, U.S.Code Cong. & Admin.News 1978, p. 6295. An explanation of the origin and contours of the concept is set forth in H.R.Rep.95–595, 95th Cong., 1st Sess.:

> The concept is derived from the Fifth Amendment protection of property interest. [Citations omitted.] It is not intended to be confined strictly to the constitutional protection required, however. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, the section recognizes the availability of alternative means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind *the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.* (Emphasis added.)

*Id.* at 339, U.S.Code Cong. & Admin.News 1978, p. 6295.

In the present case, appellant's property interests are governed by the terms of its promissory note—an instrument payable on demand. Under the Uniform Commercial Code, a cause of action against the maker accrues "in the case of a demand instrument upon its date." Va.Code Ann. § 8.3–122(1)(b). Unless an instrument provides otherwise, in the case of a demand instrument, interest runs from the date of demand. Va.Code Ann. § 8.3–122(4)(a). In the present case, the note's stated rate of interest is 9½ per annum. It would be a simple matter to state that the interest is provided in the note and pursuant to the Uniform Commercial Code that interest rate is to prevail until payment. Such treatment, however, would fail to give recognition to the meaning of "adequate protection."

■ If appellant were allowed to foreclose immediately in accordance with its demand instrument, upon completion of foreclosure it would have the use of its money at a current or market interest rate. Unquestionably, the right to receive immediate payment is a valuable right. There is no reason why the debtor should enjoy the use of its secured creditor's money at a lower rate of interest than a current or market rate, after the debt has become due and its retrieval enjoined by the institution of bankruptcy proceedings. Part of the value of a secured demand note lies in the ability of the secured creditor to receive payment on demand, with resort to his security if necessary. To deprive him of that right is to deprive him of value. Under the concept of adequate protection the bankruptcy court should require "such relief as will result in the realization of value." H.R.Rep. 95–595, 95th Cong., 1st Sess., at 340, U.S.Code Cong. & Admin.News 1978, p. 6296.

■ This case will be remanded to the bankruptcy court for the formulation of a plan which adequately protects the right which appellant would have otherwise had, to receive immediate payment of the debt. The plan so formulated shall permit an increase in the interest rate payable on the principal to such a rate as appellant could

---

that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

  (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

  (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

reasonably expect to obtain from the investment of such funds.

REVERSED and REMANDED.