In re MONROE PARK, a Limited Partnership; formerly known as Monroe Park, a Limited Partnership, with Henry L. Weinstein as General Partner.

METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation, Assignee of Gilpin Van Trump and Montgomery, Incorporated, a Delaware corporation, Plaintiff,

v.

MONROE PARK, a Limited Partnership; formerly known as Monroe Park, a Limited Partnership, with Henry L. Weinstein as General Partner, Defendant.

Civ. A. No. 81–361.
Bankruptcy No. 81–75.
Adv. No. A81–33.

United States District Court,
D. Delaware.

Feb. 25, 1982.

David Roeberg and Mark Lynch of Roeberg & Associates, P. A., Wilmington, Del., for appellant, Monroe Park.

Eduard F. von Wettberg III and Daniel H. Krapf of Morris, James, Hitchens & Williams, Wilmington, Del., for appellee, Metropolitan Life Insurance Co.

## OPINION

LATCHUM, Chief Judge.

This is an appeal from a decision of the Bankruptcy Court granting plaintiff, Metropolitan Life Insurance Company ("Metropolitan"), relief from an automatic stay imposed by 11 U.S.C. § 362(a). The trial court's order allowed Metropolitan to pursue a mortgage foreclosure action then pending in state Superior Court against de-

fendant, Monroe Park, notwithstanding the fact that Monroe Park had filed a voluntary petition in Bankruptcy Court seeking reorganization under Chapter 11. For the reasons discussed in this opinion, the Court concludes that the decision of the Bankruptcy Court to lift the stay will be affirmed.

## I. *Facts*

On April 5, 1973, Monroe Park, a Delaware limited partnership, executed a promissory note and mortgage, payable to Gilpin, Van Trump & Montgomery, Incorporated ("Gilpin"), in the amount of $5.8 million. Both instruments were simultaneously assigned by Gilpin to Metropolitan and the mortgage was recorded in the Office of Recorder of Deeds in and for New Castle County on that same date. The promissory note specified an interest rate of 8.375% per annum, with interest only payable until August 1, 1973, and monthly installments of $46,400, representing accrued interest and principal, payable for 15 years thereafter. The balance of any principal sum on the loan, together with interest, was to be paid by September 1, 1988.

The mortgage instrument pledged as security certain real estate in Greenville, Delaware known as Monroe Park Apartments, and provided for certain remedies in the event of default, including acceleration of the debt and foreclosure, accrual of interest following default at "the maximum rate permitted by law," and reasonable attorney's fees incurred in the foreclosure action. The mortgage further provided that in the event of foreclosure, any judgment could be enforced only against the mortgaged premises, and Monroe Park could not be personally liable for the amount of the deficiency beyond the collateral.

Monroe Park made payments on the note until November, 1980, at which time the installment due on May 1, 1980, was tendered. On January 15, 1981, Metropolitan commenced a mortgage foreclosure action in Superior Court, seeking recovery of the unpaid principal balance on the loan, late charges, post-default interest, attorney's fees and certain monies advanced by Metro-

politan to Monroe Park. Shortly thereafter, on February 19, 1981, Monroe Park filed a voluntary petition in United States Bankruptcy Court for the District of Delaware seeking reorganization under Chapter 11 of the Bankruptcy Code. The filing of that petition automatically stayed the state foreclosure action under 11 U.S.C. § 362(a).

On June 8, 1981, Metropolitan petitioned the Bankruptcy Court for relief from the automatic stay under 11 U.S.C. § 362(d), arguing that its interest in the mortgaged property was inadequately protected. After a hearing in which expert testimony was presented by both sides, the Bankruptcy Court concluded that the outstanding liens on the property, consisting of the mortgage lien and prior statutory liens in favor of New Castle County and the City of Wilmington for unpaid water and sewer service charges, exceeded its fair market value and that any appreciation in the property was offset by accruing interest and late charges stemming from the default. Accordingly, the court found that because the equity cushion and future appreciation offered by Monroe Park as adequate protection for Metropolitan's interest in the property was non-existent, Metropolitan was entitled to relief from the stay under § 362(d)(1). The effect of this ruling was to allow the state foreclosure action to proceed.

Monroe Park then filed a notice of appeal from the order of the Bankruptcy Judge, and, pursuant to Bankruptcy Rule 805, sought a stay of that order pending appeal, first from the Bankruptcy Court itself and on two subsequent occasions from this Court. All three motions were denied. On January 28, 1982, a judgment of foreclosure in the amount of $6.5 million, plus interest from January 1, 1982 and costs, was entered in the Superior Court in favor of Metropolitan and against Monroe Park. Although a request for a sale of Monroe Park Apartments was filed by Metropolitan on January 29, 1982, both parties agree that the sale will most likely not take place until April, 1982.

## II. *Discussion*

### A. *Validity of the Mortgage Instrument*

Monroe Park first argues that the mortgage instrument held by Metropolitan is defective because it is not an instrument under seal as required by state law. Accordingly, this mortgage could not properly form the basis for a foreclosure action and Metropolitan did not have an interest in property that was entitled to adequate protection under the Bankruptcy Code.

 This argument can be summarily dismissed for two reasons. First, the Court is not empowered to consider totally new issues of fact, not raised before, or presented to, the Bankruptcy Court. *See In re Rea Holding Corp.*, 2 B.R. 733, 737 (S.D.N.Y. 1980); *In re Gardner*, 455 F.Supp. 327, 329 (N.D.Ala.1978); *cf. Andrews v. Chemical Carriers, Inc.*, 457 F.2d 636, 640 (C.A.3), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972). Because Monroe Park never questioned the validity of the mortgage instrument in the proceedings below, and, in fact, conceded that the mortgage properly encumbered the property commonly known as Monroe Park Apartments, it cannot now be heard to dispute the validity of the mortgage in this forum. Second, this issue was specifically litigated between the parties in the Superior Court foreclosure action and was there decided adversely to Monroe Park. Accordingly, under the doctrine of collateral estoppel, this determination is conclusive on the parties, and Monroe Park is barred from relitigating any technical defects in the mortgage instrument before this Court. *See Matter of McMillan*, 579 F.2d 289, 291–92 (C.A. 3, 1978); *Haize v. Hanover Insurance Co.*, 536 F.2d 576, 579 (C.A. 3, 1976).

### B. *Adequate Protection*

Monroe Park alternatively argues that the Bankruptcy Judge's finding of inadequate protection, as to Metropolitan's interest in the mortgaged premises, was erroneous. Some discussion of the rather elusive concept of adequate protection and a more detailed account of the proceedings below are necessary to resolve this issue.

██ Under 11 U.S.C. § 362(d), there are two statutory grounds for lifting an automatic stay triggered by the filing of a petition under the Bankruptcy Code. A stay may be terminated, annulled, modified or conditioned either: (1) for cause, including lack of adequate protection; or (2) where the debtor lacks equity in the property and the property is not necessary to an effective reorganization. By statute, the task of justifying a continuation of the stay is primarily allocated to the debtor; it must shoulder the burden of proof on the question of adequate protection and all other issues arising from the stay, except the debtor's equity in the property. Any proof offered on the latter issue is the responsibility of the secured creditor. 11 U.S.C. § 362(g).[1]

The term adequate protection is not specifically defined in the Bankruptcy Code. It is generally accepted, however, that the concept of adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's interest in the collateral, pending the outcome of bankruptcy proceedings. 2 Collier on Bankruptcy, ¶ 361.01 at 361–6. Section 361 of the Code offers three non-exclusive means of providing adequate protection. The first two methods, viz., (1) periodic cash payments from the debtor to the secured creditor, and (2) the tender of an additional or replacement lien on other property of the debtor, are both affirmative acts specifically designed to compensate the secured creditor for a decrease in value of his interest in the debtor's property. The third method identified in § 361 is a "catch all" provision, permitting such other means of relief as

---

1. Monroe Park argues that Metropolitan had the burden of establishing before the Bankruptcy Court a prima facie case of lack of adequate protection for its interest in the mortgaged property, before Monroe Park could be obligated to submit evidence on this issue. Acceptance of this contention clearly would stand the statutory allocation of burden of proof, codified in § 362(g), on its head, and the Court will not engage in such judicial redrafting of an unambiguous legislative directive.

will result in the realization by the secured creditor of the "indubitable equivalent" of his interest in property. 11 U.S.C. § 361(3); Bankruptcy Reform Act of 1978, Statements by Legislative Leaders, 124 Cong. Rec. H 11089, *reprinted in* [1978] U.S.Code Cong. & Ad.News 6436, 6443; *In re Rogers Development Corp.*, 2 B.R. 679, 683 (E.D.Va. Bkrtcy.1980). The legislative history makes clear that under this latter provision the secured creditor may not be deprived of the "benefit of [its] bargain .... Though the creditor might not receive his bargain in kind the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for." H.R. Rep.No. 595, 95th Cong., 1st Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 6295.

In the proceeding before the Bankruptcy Judge, Monroe Park filed a "Statement Concerning Adequate Protection" alleging that Metropolitan's interest in the mortgaged premises was adequately protected by virtue of the following facts: (1) there was a substantial equity cushion in the premises; (2) there was no diminution or impairment of value in the premises because the property was appreciating; and (3) Monroe Park would preserve the status quo as to the value of Metropolitan's interest in the premises by paying for water service, sewer service, real estate taxes and insurance since the date of the filing of the petition. (Docket Item ["D.I."] 2, ex. C.) At the hearing on Metropolitan's motion to lift the stay, the parties primarily directed their attention towards the first method of adequate protection cited by Monroe Park, the alleged presence of an equity cushion in the property.

In rejecting Monroe Park's proffered basis for adequate protection, the Bankruptcy Court drew the following conclusions: (1) the fair market value of Monroe Park Apartments was $6 million; (2) the mortgaged property was subject to primary statutory liens held by New Castle County and the City of Wilmington in the aggregate amount of $500,000; (3) regardless of which interest figures were utilized in computing post-default interest, the total debt owing to Metropolitan and the statutory encumbrances exceeded the value of the collateral, thus negating any claim of a substantial equity cushion; and (4) any appreciation in the property was offset by accruing interest and late charges resulting from the loan default. (D.I. 2, ex. I.)

In this appeal, Monroe Park does not dispute the accuracy or legitimacy of these findings. Instead, Monroe Park now argues that the Bankruptcy Court erroneously required adequate protection for the entire amount of the debt owing to Metropolitan, rather than for the amount of the debt actually secured by collateral at the time the petition for reorganization was filed. Adequate protection, according to Monroe Park, is meant to preserve the status quo for the secured creditor while the bankruptcy proceedings are pending. If the value of the collateral at the commencement of Chapter 11 proceedings is less than the full amount of the debt, the creditor has a secured claim equal to that value only, minus the amount of any primary liens, and has an unsecured claim for the deficiency. Only the allowed secured claim is entitled to adequate protection. At the commencement of the Chapter 11 proceedings in this case, Metropolitan's interest in collateral was valued at approximately $5.5 million (fair market value of property [$6 million] minus value of statutory liens [$500,000]). Because the mortgaged property was appreciating and the primary liens were purportedly not increasing, Monroe Park argues that the value of Metropolitan's interest in the collateral, or the $5.5 million, would be unimpaired during the pendency of the Chapter 11 proceedings, its interest was adequately protected and the stay should have been continued.

■ At the outset, the Court is troubled by the fact that this argument was never seriously urged upon the Bankruptcy Judge, and the temptation to refuse consideration of the issue at this juncture is strong. Ordinarily, appellate review should be confined to those matters actually raised at the trial level, to discourage belated and

unfair efforts to tender a winning argument after an unfavorable ruling has been rendered. In the trial proceedings, Monroe Park primarily argued that Metropolitan's interest in the mortgaged premises was adequately protected by an equity cushion. Generally, equity provides adequate protection only if the creditor may foreclose upon the collateral and realize an amount sufficient to cover fully the entire balance due on the debt. *See In re 5-Leaf Clover Corp.*, 6 B.R. 463, 466 (S.D.W.Va.Bkrtcy.1980). The Bankruptcy Court thus had no occasion to consider Monroe Park's present claim that the debt owing to Metropolitan was only partially secured at the time the Chapter 11 petition was filed, and that no diminution in value of this interest in collateral would occur during the pendency of the bankruptcy proceedings. Despite the strong public policy interest in rejecting newly formulated arguments at the appellate. level, however, the Court will address Monroe Park's contentions.

The Court recognizes that there is a substantial body of case law holding that adequate protection during the pendency of a stay requires only preservation of the creditor's allowed secured interest in collateral at the time the petition was filed—that is, the value of the collateral minus the amount of any primary liens. *See e.g., In re BBT*, 11 B.R. 224, 229 (D.Nev.Bkrtcy. 1981); *In re American Mariner Industries, Inc.*, 10 B.R. 711, 713 (C.D.Ca.Bkrtcy.1981); *In re Nixon Machinery Co.*, 9 B.R. 316, 317 (E.D.Tenn.Bkrtcy.1981); *In re Williams*, 7 B.R. 234, 237 (M.D.Ga.Bkrtcy.1980); *In re El Patio, Ltd.*, 6 B.R. 518, 522 (C.D.Ca. Bkrtcy.1980); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (E.D.Va.Bkrtcy.1980). The basis for this theory is that at the time the bankruptcy proceeding is commenced, foreclosure on the collateral would allow the secured creditor to recoup only the value of the property, less any superior liens, and not necessarily the entire amount of the debt then due. The creditor would receive no less than what he bargained for— the property or its equivalent. Any deficiency between the value of the collateral and the debt would not be recovered and would represent the entrepreneurial risk accompanying the loan. *See In re El Patio, Ltd.*, 6 B.R. 518, 523 (C.D.Ca.Bkrtcy.1980). Because at the time a bankruptcy petition is filed, the creditor is entitled only to the current value of its interest in the collateral, the courts listed above have determined that adequate protection during a stay requires only maintenance of that interest or realization of the indubitable equivalent of that interest, and not adequate protection of an amount fully sufficient to cover the entire debt.

Even if the Court were to accept this argument, however, it is clear that Monroe Park failed to demonstrate to the Bankruptcy Court that the value of Metropolitan's interest in the collateral was adequately protected. Obviously, any accruing property taxes, or water or sewer charges on the mortgaged property, which were not paid by Monroe Park during the pendency of the bankruptcy proceedings, would erode the value of Metropolitan's secured interest. Because claims based on such unpaid fees would be superior to the mortgage lien, they would effect a decline in Metropolitan's security. In addition, Metropolitan's interest could not be adequately protected without concrete evidence that the mortgaged property was properly insured and maintained. *See In re El Patio, Ltd., supra,* 6 B.R. at 522. As Monroe Park conceded in its opening brief in support of this appeal, however, the charges for sewer service were not paid during the bankruptcy proceedings and the statutory lien in behalf of New Castle County was increasing. (D.I. 5 at 24.) Monroe Park never established, moreover, that the mortgaged property was appreciating to an extent sufficient to cover the increasing amount of this lien.[2] This

2. The Bankruptcy Court never made a specific finding that the mortgaged property was appreciating, but held only that any appreciation was more than offset by continuing interest and late charges stemming from the default. (D.I. 22 at 8.) An independent review of the trial record does not establish whether, and the extent to which, the property was appreciating. Metro-

factor, in and of itself, would be sufficient to affirm the finding of the Bankruptcy Court as to lack of adequate protection.

▮▮ In addition, even if Monroe Park had established that the collateral underlying the debt to Metropolitan would remain fixed during the pendency of Chapter 11 proceedings, Metropolitan's secured interest could not be adequately protected without some compensation for the loss of use of its money during the interim period between filing of the petition and confirmation. If Metropolitan had been allowed to foreclose on the mortgaged property at the time the bankruptcy petition was filed, it could have reinvested the money gained through foreclosure at current interest rates, after a judgment in its favor was entered and executed upon. *In re Virginia Foundry Co., Inc.*, 9 B.R. 493, 498 (W.D.Va.1981); *Matter of Anchorage Boat Sales, Inc.*, 4 B.R. 635, 643 (E.D.N.Y.Bkrtcy.1980). This right of recourse to the collateral is an important part of the value of Metropolitan's interest in property which must be fully protected. Because Metropolitan would be delayed in realizing the value of its interest in collateral by virtue of the automatic stay, it was incumbent upon Monroe Park to provide some form of relief which would compensate Metropolitan for the loss of use of its money or to supply some "indubitable equivalent" of the accruing interest of which Metropolitan was deprived.[3] *Id.*

Such relief was never forthcoming in the trial proceedings. Monroe Park never offered to make periodic cash payments to Metropolitan as compensation for the accruing interest charges or to provide additional or replacement liens on other property sufficient to cover the interest. Moreover, the record reveals, and Monroe Park does not dispute the fact, that appreciation could not have offset these accruing charges. Thus, the failure to compensate Metropolitan for the delay in realization on the value of its interest in collateral was an additional reason for lifting the automatic stay under § 362(d).

▮ It may be that compensation for unpaid accruing interest charges during the pendency of bankruptcy proceedings is not necessary in all cases. *See In re BBT*, 11 B.R. 224, 232 (D.Nev.Bkrtcy.1981). Indeed, adequate protection is a flexible concept which requires a Court to make decisions on a case-by-case basis, after full consideration of the peculiar characteristics common to each proceeding. *See In re San Clemente Estates*, 5 B.R. 605, 609 (S.D.Ca.Bkrtcy. 1980). In this case, however, where a plan of reorganization was not even filed until nine months after the reorganization proceeding was first commenced, and interest charges were accruing at a minimum of $36,000 per month, it was not unreasonable to require Monroe Park to proffer some form of compensation for Metropolitan's loss of use of its money while the stay was imposed.

---

politan's two experts testified that any appreciation was "minimal" or "non-existent," respectively. (D.I. 19 at 45, 101.) Although the general partner of Monroe Park testified that, in his opinion, the mortgaged property was appreciating (D.I. 20 at 247), no specific figures or underlying documentary evidence was presented and this self-serving statement cannot be accorded any real significance. Because Monroe Park had the burden of proof on the appreciation issue, the Court cannot now conclude that the erosion of Metropolitan's security interest by virtue of the water lien was offset by some appreciation in the mortgaged premises.

**3.** In drawing this conclusion, the Court realizes that at least one Bankruptcy Court has rejected the contention that partially secured creditors are entitled to be compensated for the loss of use of their money during the gap between the filing of the petition and confirmation. *See In re American Mariner Industries, Inc.*, 10 B.R. 711, 712 (C.D.Ca.Bkrtcy.1981). The Court agrees with the only district court to have expressly considered this issue, however, that without such compensation or an appropriate substitute, the value of the creditor's interest in property would necessarily erode during the pendency of the stay. *In re Virginia Foundry Co., Inc.*, 9 B.R. 493, 498 (W.D.Va.1981). This conclusion takes into account the fact that "'adequate protection' must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now." *In re Murel Holding Corporation*, 75 F.2d 941, 942 (C.A. 2, 1935); *Matter of Anchorage Boat Sales, Inc.*, 4 B.R. 635, 643 (E.D.N.Y.Bkrtcy.1980).

## C. *Balance of Hurt*

 Monroe Park also argues that even if Metropolitan's interest in the mortgaged property was not adequately protected, the Bankruptcy Court failed to consider the impact of the stay on the parties and the "balance of hurt" in fashioning relief. This argument apparently is predicated on two basic suppositions: first, that it is incumbent upon the Bankruptcy Court to consider and implement less onerous alternatives than termination of the stay, if possible, where it is determined that a secured interest is not adequately protected; and, second, that the Bankruptcy Court, as a court of equity, must balance the harm to each party in dispensing appropriate relief and should refuse to modify or terminate a stay where such actions would irreparably injure a debtor's opportunity for successful financial rehabilitation.

The legislative history of §§ 361 and 362 of the Bankruptcy Code, and the case law generated thereunder, clearly establish that the sole duty of the Bankruptcy Court, in an adversary proceeding challenging continuation of an automatic stay, is to pass upon the debtor's proposed form of adequate protection. The court is not obliged to fashion *sua sponte* a mechanism which it believes will adequately protect the secured creditor. *In re Riviera Inn of Wallingford, Inc.*, 7 B.R. 725, 729 (D.Conn.Bkrtcy.1980); *Matter of Lackow Brothers, Inc.*, 10 B.R. 717, 720 (S.D.Fla.Bkrtcy.1981). Instead, "to avoid placing the court in an administrative role," the responsibility of proposing a protection method is reserved exclusively for the debtor. H.R.Rep.No. 595, 95th Cong., 1st Sess., *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 6295. Thus, if the debtor asserts certain means of adequate protection and fails to support these means with competent evidence, the bankruptcy court may permissibly lift the stay without further exploration of any viable alternatives. *See e.g., Matter of Lackow Brothers, Inc., supra*, 10 B.R. at 720; *In re Britton*, 9 B.R. 245, 248 (E.D.Pa.Bkrtcy.1981); *In re Riviera Inn of Wallingford, Inc., supra*, 7 B.R. at 727; *Matter of Anchorage Boat Sales, Inc., supra*, 4 B.R. at 643. This process was followed by the Bankruptcy Court in this case and no more is required.

 In addition, to the extent that a balancing of equities must be undertaken in a proceeding to terminate an automatic stay, the Court finds that the overriding equitable considerations favored Metropolitan in this case. At the time that the hearing on Metropolitan's motion to lift the stay was held, payments on the mortgage had been in default for over one year, outstanding statutory liens were increasing, and Monroe Park had "shielded its apartment house complex under the automatic stay umbrella" for five months without having even filed a plan of reorganization. *In re Gaslight Village, Inc.*, 8 B.R. 866, 870 (D.Conn.Bkrtcy.1981). The Court is also not convinced that at the time of the hearing, the debtor was assiduously attempting to resolve its financial difficulties. *See In re San Clemente Estates*, 5 B.R. 605, 610 (S.D.Ca.Bkrtcy.1980). The Court thus finds that continuance of the stay would have hurt Metropolitan to a greater extent than termination would have impaired the rights of Monroe Park. *In re Barrows*, 15 B.R. 338, 341 (M.D.Pa.Bkrtcy.1981); *In re Anderson*, 9 B.R. 248, 250 (E.D.Pa.Bkrtcy. 1981); *In re Britton, supra*, 9 B.R. at 250.

## D. *Findings of Fact and Conclusions of Law*

 As its final challenge to the order of the Bankruptcy Court, Monroe Park argues that the court failed to make the requisite findings of fact and conclusions of law required by Bankruptcy Rule 752(a). This argument merits little comment. The oral findings and conclusions announced by the trial court at the conclusion of the hearing were sufficient to indicate the basis of the court's opinion and provide an adequate focus for appellate review. *Cf. Milliner v. Gov't of Virgin Islands*, 593 F.2d 532, 534 (C.A. 3, 1979). Moreover, any omission of a particular factual determination or legal conclusion on the part of the trial court could be attributed solely to Monroe Park's failure to proof on the respective issue and not to any error made by the court.

942

*Conclusion*

For the reasons stated in this opinion, the Court finds that the decision of the Bankruptcy Court to lift the automatic stay imposed by 11 U.S.C. § 362 and thus allow Metropolitan to foreclose on the property known as Monroe Park Apartments is affirmed. An order will be entered in accordance with this opinion.