**In re Theodore FRANCIS and Pansy Francis, Debtors.**

**Bankruptcy No. 84–00080(SE).**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

May 31, 1984.

Jeffrey J. Kalinowski, St. Louis, Mo., for movant.

Peter D. Kerth, St. Louis, Mo., for debtors.

· Gus R. Camp, Piggott, Ark., Tom K. O'Loughlin, II, Cape Girardeau, Mo., for creditors' committee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Metropolitan Life Insurance Company (Movant) has moved for an order granting it relief from the automatic stays under 11 U.S.C. § 362(a) so that it may foreclose its deed of trust and mortgage on a 664 acre farm belonging to the Debtors and located in both Butler County, Missouri and Clay County, Arkansas. Movant alleges in its motion that Debtors (a) have no equity in the subject property, (b) have no reasonable prospect of reorganization and (c) have not offered and cannot offer it adequate protection for its interest in its collateral. Debtors, in their reply to the motion, deny these allegations and assert that they, in fact, have a substantial "equity" in the property.

The facts developed by the parties at the hearing on the motion are these:

1. On March 15, 1982, Debtors executed and delivered to Movant their promissory note in the amount of $650,000 and bearing interest at a rate of 16.5 per cent. The note is payable over twenty (20) years in annual installments of $20,000 each, due on

March 1 of each year except that the final installment due on March 1, 2002, is in the amount of $270,000. As security for payment of this note, Debtors on that same date gave Movant a first deed of trust on a 378 acre tract in Butler County, Missouri, and a first mortgage on a contiguous 285 acre tract in Clay County, Arkansas.

2. Debtors had simultaneously purchased these tracts for $1,200 per acre from Dr. Duckworth and his spouse. Dr. Duckworth and Mrs. Duckworth financed the remaining portion of the price and apparently lent Debtors additional sums in the approximate amount of $129,000. To evidence and secure this indebtedness, Debtors gave the Duckworths a promissory note in the principal amount of $275,000 and a second deed of trust and second mortgage on the subject property.

3. Subsequently, Debtors executed another promissory note in the principal amount of $128,000 in favor of Gordon Duckworth and gave this holder of the note a third deed of trust and mortgage on the subject property. This note was later sold at a foreclosure sale to the Debtors' children for $43,000.

4. Debtors defaulted on Movant's note and Movant thereafter accelerated the principal balance of its note. As of May 1, 1984, Debtors owe Movant $778,967.17 plus $4,000 in miscellaneous legal expenses. Debtors owe the Duckworths approximately $300,000 and owe Debtors' children approximately $140,000. The total of all the indebtedness encumbering the property in question is in excess of $1,200,000.

5. On March 1, 1984, Debtors filed their petition for relief under Chapter 11 of the Bankruptcy Code and on March 13, 1984, Movant filed the instant motion.

## CONCLUSIONS

1. VALUE OF PROPERTY. At the hearing, Movant offered the testimony of James Sexton, a real estate broker and appraiser from Kennett, Missouri. Mr. Sexton stated that he had made approximately 100 farm appraisals since 1967 and made appraisals before in Butler County,

Missouri and Clay County, Arkansas. Based on his own physical inspection of the subject farm property and his review of ten other comparable sales of farm property in the area surrounding the subject property, Mr. Sexton valued this property at $1,075 per acre or a total of $713,800.

Debtors, in turn, offered the testimony of James Teller, an appraiser from Festus, Missouri. Mr. Teller has been an appraiser since 1957 and has made "a couple of hundred" farm appraisals during this time. However, Mr. Teller had very few appraisals within the area surrounding the property in question. Based on his own physical inspection of the property and upon his review of several sales of comparable farm property, Mr. Teller valued the subject property at $1,400 per acre for a total of $929,600.

■ After considering these opinions and the facts underlying these opinions and other evidence, the Court finds that the value of the subject property is $1,175 per acre or a total of $780,200. Debtors paid $1,200 per acre for the property in March, 1982. Movant's appraiser, James Sexton, testified that farm real estate values had remained stable since 1983 and there was no evidence from which the Court could infer that the property had decreased substantially in value since March, 1982. True, the purchase price paid by the Debtors does not necessarily reflect its fair market value. However, in this case, it is a more reliable indicator of its present value than are the "comparable" sales used by the appraisers of the two parties. Movant's appraiser used sales of properties substantially smaller than the subject property and Debtors' appraiser always made "adjustments" to his "comparable" sales to arrive at his valuation. Movant's other witness, Billy O. Brigance, testified that the property had not been farmed in 1983 and had weeds. Thus, a small decline in the value of the subject property is evident.

2. *EQUITY.* Since there are liens encumbering the subject property that total indebtedness in excess of $1,200,000, there is clearly no equity in this property. The value of the property is, at present, roughly equal to the current indebtedness owed the Movant.

3. REASONABLE PROSPECTS OF SUCCESSFUL REORGANIZATION. Movant urges that Debtors have no reasonable prospect of successfully reorganizing their farm operations and, therefore, the property in question is not "necessary to an effective reorganization" within the meaning of 11 U.S.C. § 362(d)(2). Whether or not that section of the Code requires a showing of probable success by a debtor to avoid the lifting of the automatic stays under 11 U.S.C. § 362(a), this argument overlooks Debtors' intention announced at the hearing to liquidate the subject property along with their other farm properties. Debtors' apparent hope is to realize sufficient amounts from the sale of their farm properties to pay their creditors, both secured and unsecured, and avoid the liquidation of their interest in other non-farm assets. Although the subject property is worth much less than the debt encumbering it, Debtors desire to sell it at an optimal price in order to reduce the amounts of the deficiency claims of the Duckworths and the Debtors' children. Hence, the issue of whether Debtors can successfully reorganize is immaterial in this instance.

■ 4. ADEQUATE PROTECTION. Movant also urges that Debtors have not and cannot afford it adequate protection of its security interest in the subject property within the meaning of 11 U.S.C. § 362(d)(1). Movant apparently makes no claim that the value of the 664 acre farm is decreasing as a result of the automatic stays. Instead, its claim of a lack of adequate protection is based solely on its contention that a secured creditor must receive compensation for the loss of its opportunity to liquidate its collateral and reinvest the proceeds. In support of this proposition, Movant cites *In re Monroe Park*, 17 B.R. 934 (Bkrtcy.D. Del.1982); *In re Virginia Foundry Co., Inc.*, 9 B.R. 493 (W.D.Va.1981); *Matter of Anchorage Boat Sales*, 4 B.R. 635 (Bkrtcy. E.D.N.Y.1980).

This Court recently in its opinion, 43 B.R. 157, dated May 16, 1984 in *In re: Burt H. Rowe and Anne B. Rowe,* case number 83–00144(SE); *In re: Rolanco, Inc.,* case number 83–00143(SE); and *In re: Saline Valley Land Company, Inc.,* case number 83–00142(SE), rejected this view of "adequate protection" and, therefore, rejects Movant's assertion that it receive such compensation in this case.

Since the amount of indebtedness owed Movant is actually slightly more than the value of the subject property, Movant has no "equity cushion" and the Court need not consider whether the loss of such an "equity cushion" warrants compensation under the concept of adequate protection.

■ Ultimately, absent some evidence of depreciation in value, the Court must consider the balance of the harm to the parties, *see* 2 *Collier on Bankruptcy,* p. 362.-49 (15th Ed.). Here, Movant would not be likely to sell its collateral immediately if the Court were to lift the automatic stays as requested by Movant. Movant would probably be forced to rent the property and would receive as its only income the rental payments. Thus, a brief delay in Movant being allowed access to its collateral together with the granting to Movant of the income from property is reasonable in the circumstance. Debtors should be granted a reasonable opportunity to sell the property for more than a "distress sale" price.

On the other hand, Debtors have been unable to sell the property for the year preceding their filing of the instant Chapter 11 petition. Such failure suggests that Debtors' idea of the value of the property is unrealistic. Unless a time restriction is placed on Debtors' sales efforts, Debtors have no incentive to face reality.

■ Accordingly, the Court will continue the automatic stays in effect until November 1, 1984. If Debtors have not obtained a valid contract for sale by that date, the automatic stays will be lifted without further hearing on the issues litigated herein. Movant will be entitled to the rental payments due under the lease described in the

Affidavit of Counsel of Metropolitan Life Insurance Company.

A separate order consistent with this opinion will be entered this date.