In re NEW YORK, N. H. & H. R. CO.

MERCHANTS NAT. BANK OF BOSTON v. NEW YORK, N. H. & H. R. CO. et al.

No. 214.

Circuit Court of Appeals, Second Circuit.

April 3, 1939.

924

Peabody, Brown, Rowley & Storey, of Boston, Mass. (Howard W. Brown, Charles M. Storey, and David R. Pokross, all of Boston, Mass., of counsel), for appellant.

Hermon J. Wells, of New Haven, Conn. (J. H. Gardner, Jr., of New Haven, Conn., of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The New York, New Haven and Hartford Railroad Company filed its petition for reorganization under Sec. 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, on October 23, 1935, in the District Court for the District of Connecticut. It was duly approved and trustees were appointed.

At the time the petition was approved a general ex parte injunction was issued. The part of it now directly involved restrained all persons from disposing of any collateral of the debtor held by them. At that time, and ever since, the appellant has held, as collateral security for the payment of a note signed by the debtor, 5,246 shares of the capital stock of the Boston & Providence Railroad Corporation which were owned by the debtor and pledged by it to the appellant to secure the payment of the note. This note is the last of a series of renewals of a note for $500,000 given by the debtor to the appellant for a loan made September 28, 1932. The renewal note now held by the appellant is dated July 1, 1935, and was due January 2, 1936. A balance of principal to the amount of $465,810.09 remains unpaid together with interest from October 2, 1937.

The appellant, as pledgee of the collateral held as security for the payment of the note, was expressly given the right to sell the collateral upon default of the maker (the debtor) but has been, and is now, restrained from so doing by the terms of the general injunction above mentioned. After the note was in default and on May 12, 1938, the appellant filed with the court its petition seeking a modification of the injunction so as to permit it to sell the collateral. Its petition was denied with leave to renew.

The Boston & Providence Railroad Corporation owns the part between Boston and Providence of what has for years been operated and known as the New York, New Haven and Hartford Railroad system. All of its property was leased to the Old Colony Railroad Company in 1888 for a term of ninety-nine years. In accordance with the terms of a lease from the Old Colony to the debtor in 1893 the leasehold interest just mentioned was transferred to the debtor. All three of these railroads are now being reorganized in proceedings brought pursuant to Sec. 77 of the Bankruptcy Act. The trustees of the debtor have been appointed and are serving as the trustees in the Old Colony proceedings. The petition for the reorganization of the Boston & Providence Railroad Corporation was filed in the District Court for the District of Massachusetts on August 4, 1938, and trustees were appointed on August 22, 1938.

The total shares of the capital stock of the Boston & Providence Railroad Corporation outstanding are 39,960 of which 31,442 shares are publicly held; 3,272 are in a sinking fund held for the retirement of Boston & Providence debentures which were due July 1, 1938; and 5,246 are held by the appellant as collateral on the note previously described. These shares are listed on the Boston Stock Exchange and have had a rather active over-the-counter market. At any time after the note became due up to and throughout the month of September, 1937, the collateral held by the appellant could have been sold, but

for the injunction, for at least enough to have paid the note in full. Up to and including October 2, 1937, dividends were paid on the shares which were sufficient to pay accrued interest in full and reduce the principal to $456,810.09.

On October 6, 1937, the Bankers Trust Company, which is the trustee under the first and refunding mortgage of the debtor, filed its petition for an order directing the debtor's trustees to pay no more rent on the lease under which it held the Boston & Providence property. Since then the Boston & Providence has paid no dividends on its stock and the appellant has received no further payments of interest or principal on its note. Since then, also, the selling prices of the stock of the Boston & Providence have declined until in March, 1938, they reached a low of 61.

On May 3, 1938, the trustees of the debtor answered the petition of the Bankers Trust Company. The answer set forth, inter alia, that the Boston & Providence railroad property was being operated at a loss which had amounted to $550,000 for the year which ended December 31, 1936 and that there had been a corresponding net deficiency of over $1,100,000 for the year which ended December 31, 1937. It was also stated that it was not in the interest of the debtor to continue to advance money to pay the amounts due under the Boston & Providence lease which was said to be burdensome to the estate of the Old Colony Railroad Company in that operating revenues were, and would be, insufficient "by a wide margin to cover the expenses chargeable to such operation".

An order was thereafter entered on the petition directing the debtor's trustees to pay no more rent on the Boston & Providence lease and to reject the lease in their capacity as trustees of the Old Colony. The question of the obligations of the Boston & Providence, growing out of the operation of its property, to the Old Colony and by way of subrogation to this debtor was reserved. The Boston & Providence lease was then rejected.

Thereafter, the selling prices of the Boston & Providence stock sank lower until the bid price was 20 on the Boston Stock Exchange with 25 asked and practically no sales. The Boston & Providence has by the rejection of its lease been left with property it is not in a position to operate itself, for it has no rolling stock, and it would be unreasonable to believe that its

stock will within any predictable time, if ever, have a selling price high enough to pay the appellant's note in full. Certainly there is now no equity whatever in the stock held as collateral for the payment of the note and no reasonable ground for believing that there ever will be. No plan for the reorganization of the debtor has yet been adopted.

On August 25, 1938, the appellant renewed its petition to have the injunction modified to permit it to sell the collateral held on the note. This petition was denied in an order dated September 22, 1938, and this appeal is from that order.

■■ The court has the power in such a reorganization proceeding as this to enjoin the sale of such collateral if a sale would so hinder and delay the preparation and adoption of a plan of reorganization as to make that impossible. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Railroad, 294 U.S. 648, 55 S. Ct. 595, 79 L.Ed. 1110. This power should be exercised to require secured creditors to wait a reasonable time before enforcing rights secured in order that the reorganization proceedings may be successful in bringing forth a plan having a fair chance of adoption if that is reasonably possible. Guaranty Trust Company v. Henwood, 8 Cir., 86 F.2d 347, 108 A.L.R. 1020.

■■ But while such prospect of success as there may be when a petition for reorganization is filed is to be preserved and protected by needed restraint upon secured creditors, it does not follow as of course from the filing of a petition that secured creditors will be held off during the pendency of the proceedings. In re Murel Holding Corporation, 2 Cir., 75 F.2d 941. And it must fairly appear when the restraint is continued that its discontinuance would hinder or obstruct reorganization in some substantial way. The right of a secured creditor to have the benefit of the bargain he made to give him that status is to be given recognition whenever it becomes apparent that by so doing the promulgation and adoption of an otherwise possible plan will not be prevented.

■ When, as here, the debtor has no equity whatever in the collateral whose sale is enjoined and no fair prospect of ever having any, it cannot be said that the sale of the collateral will prevent the preparation and adoption of an otherwise possible plan of reorganization. It is not enough to

support the injunction that the sale may produce a deficiency which will increase the unsecured claims. In re Prudence Company, 2 Cir., 90 F.2d 587. The decisive consideration is that a sale will not in any way deplete the assets of the estate since the debtor has no equity in the collateral held by the appellant. Moreover, with such a difference as exists between the amount which a sale of the collateral will bring in and the amount due on the note together with the uncertainty as to what unsecured creditors will receive on their claims, the appellant and unsecured creditors generally have no diversity of interest in respect to the sale price of the collateral to create the belief that appellant will have any incentive to sell the collateral except when in the exercise of good business judgment the best price can be obtained.

It may well be that in the reorganization of the debtor, the future operation of what is known as the New Haven system as a railroad system is desirable. But that is a matter which cannot be determined on this appeal. The collateral in question does not consist of any obligations of the debtor or of those of any subsidiary involved in these proceedings. Nothing is involved but certain shares of a railroad company the ownership of which, if this debtor did actually own them or have any equity in them, would at best give it no more than a minority stock interest in the separate reorganization proceedings of the Boston & Providence in the District of Massachusetts.

But since it does have no equity whatever in the stock the only possible interest it can have to be preserved is its status as a stockholder of record to permit it to be heard as such in the proceedings for the reorganization of the Boston & Providence. Although it would not have enough stock to control the attitude of stockholders toward any proposed plan, as the pledged stock is more than 10% of all the stock outstanding it might propose a plan.

This does not seem to us to be an adequate reason for holding off indefinitely a secured creditor whose security has become hopelessly inadequate since the injunction has been in force. It does, indeed, amount to no more than to give a holder of the bare record title the opportunity to vote the stock adversely to the interests of the real owner. There can be no joint reorganization of the debtor and the Boston & Providence under Sec. 77 since neither owns a majority of the shares of the other. Joint operation as a system is quite another matter which may come about by agreement or by action of the Interstate Commerce Commission though not by a joint reorganization. As the debtor's trustees have rejected, in their capacity as such and as the trustees of the Old Colony, the leases under which the debtor did hold and operate the property of the Boston & Providence, joint operation by agreement will require new arrangements which might, of course, grow out of a plan of reorganization adopted for the debtor and another plan of reorganization adopted for the Boston & Providence. Presumably such arrangements would be less advantageous to the stockholders of the Boston & Providence than the terms of the rejected leases. Obviously, it would be to the advantage of this debtor to be able to block a plan of reorganization of the Boston & Providence which did not further the interests of the debtor in this respect but the statute gives it no right to do so and there are no equitable reasons why it should have such a right to vote stock in which it has no equity at all. We do not mean, of course, that a stockholder who clearly has voting rights may not vote his stock as he deems best regardless of what interest he may have to prompt his vote, but only that as between two persons who both claim some interest in the stock the holder of the bare record title is not by that alone entitled to be kept indefinitely in a position to vote it in derogation of the superior right of the real owner of the entire equity to sell it. Consequently there are no equitable grounds upon which the injunction may be continued in force to restrain the appellant from selling the collateral it holds; and as its sale will not prevent the consummation of an otherwise possible plan of reorganization of the debtor, the reorganization statute does not give support for the order denying modification.

Order reversed with directions to modify the injunction in accordance with this opinion.