In re AMERICAN MARINER
INDUSTRIES, INC., Debtor.

CROCKER NATIONAL BANK,
Plaintiff-Appellant,

v.

AMERICAN MARINER INDUSTRIES,
INC., Defendant-Appellee.

BAP No. CC–81–1114–VKH.
Bankruptcy No. SA–80–03623.
Adv. No. 80–0163.

United States Bankruptcy Appellate Panels
of the Ninth Circuit.

Argued Jan. 21, 1982.

Decided March 15, 1983.

J. Ronald Trost, P.C., Sidley & Austin, Los Angeles, Cal., for plaintiff-appellant.

James E. Carter, Atty. at Law, Santa Ana, Cal., for defendant-appellee.

Before VOLINN, KATZ and HUGHES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### I. FACTS

American Mariner filed a petition for relief under Chapter 11 of the Bankruptcy Code on December 12, 1980. Crocker National Bank, a secured creditor, filed a complaint for relief from the automatic stay on February 23, 1981, alleging a debt in the principal sum of $277,500, with accrued and unpaid interest of approximately $90,000 for a total of $365,000. It further alleged that the collateral had an auction liquidation value of $130,500 and that it was entitled to adequate protection in the form of monthly cash payments equal to what it could obtain from reinvestment of the liquidated value of the collateral at a rate of prime interest plus 2 (21%) or the sum of $2,283.75. The debtor admitted the allegations of the complaint but contended that the collateral was worth substantially less than $130,000, and that if there was a liquidation, Crocker would receive considerably less than $2,200 monthly interest on the proceeds. It appears that at some point during the proceeding, the debtor offered to make monthly interest payments of $1,770 per month to Crocker. The matter was submitted to the court essentially on the foregoing basis.

### II. ISSUES AND CONTENTIONS

Appellant states the issue on appeal as follows:

"There is but one issue on this appeal: Is an undercollateralized secured creditor entitled to post-petition interest upon the value of its collateral as a condition of denying relief from the automatic stay?" (Appellant's Brief, p. 2)

Appellee, at p. 2 of its brief, states: "The appellant correctly states the issue on appeal. However, Judge Elliott, as he set forth in the first sentence of his *Memorandum of Decision* narrowed the issue as follows: 'If the value of the collateral is not depreciating, whether an unsecured creditor is entitled to interest on the present value of the collateral as adequate protection.'"

Appellant argues that when the debtor relies on adequate protection, § 362(d)(1),

as the basis for denying relief from the automatic stay, § 362(a), the *present value* of a secured party's interest in its collateral must be maintained. Apparently recognizing that § 362(d)(1) does not refer to *present value,* appellant argues by reference to the legislative history to a comparable provision of the Code (the cram down sections), § 1129(b)(2)(A)(i), (iii), that the section should be so interpreted. It adds that failure to interpret adequate protection as protecting the present value of the secured party's interest in its collateral would violate the Fifth Amendment.

After thus contending that "protection of the present value" is "an essential must of 'adequate protection'," appellant argues that protection of this present value is achieved by the payment of interest. It concludes by asking this Panel to reverse the decision appealed and order the monthly payments to be "applied as interest on the value of Crocker's collateral . . ."

The appellee debtor argues that adequate protection was provided because the "value of the collateral was not decreasing," that an undersecured creditor is entitled only to protection of the value of the collateral, that the trial court has broad discretion to consider variables such as appreciation and that the provisional nature of the automatic stay eliminates the requirement of interest. In short, appellee disputes appellant's contentions as to the present value and therefore interest.

## III. ACTION TAKEN BY THE TRIAL COURT

The court found the value of Crocker's collateral to be $110,000. Taking judicial notice of the fact that at the time the current prime rate was 18%, the court found that the position urged by the Bank would result in the debtor paying monthly interest at $1,770 (18%) as adequate protection (18% of $110,000 should be $1,980).

The court had previously ordered that the debtor pay $7,300 to the Bank for the use of inventory and cash collateral as adequate protection which was done. The debtor was showing a small profit on current operations. The court found that machinery, equipment, tools and molds used by the debtor in the manufacture of barges, which were collateral for the bank loan, were necessary to an effective reorganization; thereby rendering not relevant the issue of equity, or lack thereof, pursuant to 11 U.S.C. § 362(d)(2). The court concluded, as a corollary to 11 U.S.C. § 506(b) which implicitly denies interest to an undersecured creditor as to the deficiency, or unsecured aspect, of the claim, that interest should not be provided in these circumstances. In supporting this conclusion, the trial court alluded to the cram down provisions of the Code, 11 U.S.C. § 1129(b)(2)(A)(i)(II) and § 1325(a)(5)(B)(ii), stating that where Congress intended a secured party to be compensated for delay in realization of its collateral or its value, Congress so provided. The court held that the right of an undersecured creditor to receive interest on the value of its collateral is not constitutionally protected under 11 U.S.C. § 361. It further held that under the circumstances the debtor should be permitted a reasonable period of time to reorganize, stating:

> I submit that the debtor should be permitted a reasonable period of time (not two or three years) to reorganize. If the debtor is not able to effectuate a plan, or if delay becomes unduly burdensome, the bank can move to dismiss the Chapter 11 case or convert it to a Chapter 7 case under § 1112(b).

The court concluded:

> The debtor has offered to pay interest on the value of the collateral, $1,770 per month. Although I hold that no interest is due and although no evidence of economic depreciation has been presented, I find that $1,770 per month is adequate protection for any depreciation or depletion of the collateral that may occur. To the extent that amount exceeds depreciation or depletion, it shall be applied on

the amount of the claim allowed as secured under § 506(a).

The court also discussed the creditor's argument relative to its right to elect to prove its claim as fully secured under 11 U.S.C. § 1111(b), but this has not been pursued on appeal and therefore need not be considered.

The judgment provided that:

> ... this order is without prejudice to plaintiff reapplying for relief from the automatic stay or moving to dismiss the proceedings, or moving to convert the proceedings to Chapter 7 if the debtor does not make progress toward reorganization within a reasonable period of time.

## IV. DISCUSSION OF 11 U.S.C. § 361

### A. Adequate Protection—Background

Section 362 provides for the automatic stay. The relevant provision for adequate protection appears in 11 U.S.C. § 362(d) which provides that

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; ....

■ Section 361 defines adequate protection as it is required under §§ 362, 363 or 364. Section 361 illustrates rather than defines. As stated in 2 *Collier on Bankruptcy* (15th Ed.) § 361.01[1]

> The purpose of section 361 is to illustrate the means by which adequate protection may be provided and, as such, it is not meant to be mandatory....

In § 361.01[4], the text again states

> Section 361 consists merely of examples of adequate protection given to illustrate possible approaches to commonly recurring problems ... the ultimate meaning

of the term will be developed in a case-by-case basis, in each instance with the relief being tailored to the fact situation.

■ Section 361 sets forth two specific methods by which such protection may be provided and one general provision which was intended to add a measure of flexibility. Under subsections (1) and (2) adequate protection may be provided either by requiring the trustee to make periodic cash payments to the creditor, or by granting the creditor an additional or replacement lien in other property of the debtor. Either method is designed to protect the secured creditor from a decrease in the value of such entity's interest in such property.

Subsection (3) which, in the early stages of its legislative development, was said to "define more clearly than the others, the general concept of adequate protection," suggests that the court may grant "such other relief ... as will result in the realization by such entity of the *indubitable equivalent* of such entity's interest in such property." (Emphasis added). See Comments from the Report of the Committee of Judiciary, H.R. 8200, H.R. No. 95–595, 95th Cong. 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

The legislative history of § 361 reveals that the House sought more flexibility than the Senate was willing to accept. The Senate eliminated two proposals which would have given greater latitude to the debtors in fashioning adequate protection and retained only two of the specific methods proposed by the House Bill (periodic cash payments or replacement liens). S.Rep. No. 95–989 95th Cong. 2d Sess. (1978).

■ Subsection (3) of § 361 was the product of compromise. Although it provides general language conducive to the flexibility sought in the House, the language may be read more restrictively in that this alternative to subsections (1) and (2), which are intended to preserve the value of the security, must "result in the realization by such entity of the indubitable

equivalent of such entity's interest in such property." Thus, there is a question as to whether subsection (3) is intended to qualify subsections (1) and (2). This depends on the meaning of the term "indubitable equivalence" which is also required under § 1129(b)(2)(A)(iii) of the Code. To be confirmed, a plan of reorganization must provide secured creditors with the indubitable equivalent of their claims. Insofar as the Code is concerned, the phrase originated in Senate Rep. No. 2266, S.Rep. No. 95–090, 95th Cong. 2d Sess. (1978). With respect to what became § 1129, the report states that "[t]he indubitable equivalent language is intended to follow the strict approach taken by Judge Learned Hand in *In re Murel Holding Corp.,* 75 F.2d 941 (2d Cir.1935)." The phrase was added to § 361 later.

That a secured creditor must receive the indubitable equivalent of its claim, was first propounded by Judge Hand in *In re Murel Holding Corp., supra.* In concluding that the trial court erred in staying the creditor from enforcing its lien rights, *Murel* focused on a proposed plan which would have compelled the creditor to forego all amortization payments for ten years extending the due date until that time. Interest was to be paid at 5½% during the extension. As to § 216(7)(d) of the prior Act requiring that a plan adequately protect objecting secured creditors, the court stated:

> In construing so vague a grant, we are to remember not only the underlying purposes of the section, but the constitutional limitations to which it must conform. It is plain that 'adequate protection' must be completely compensatory; that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his collateral will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a

substitute of the most indubitable equivalence. *In re Murel, supra,* at 942.

The court concluded that to justify imposition of the stay, the proposed plan should "have better hope of success."

*Murel* has been read to provide that the concept of indubitable equivalence requires that consideration be given to the time value of money or interest. However, the case, on its facts, ultimately held that the tender of interest was insufficient; that the indubitable equivalent of the debtor's interest should be of the same quality as his money or the property. Thus, the court held that despite the time value of money being offered, the debtor's proposal was otherwise so uncertain that the offer of interest was not enough to provide safeguards equivalent to preserving the integrity and availability of the collateral during the extended period of principal payment.

There is a metaphorical aspect to the phrase "indubitable equivalent" which renders it difficult of specific application. If one considers that the phrase requires not so much absolute congruence as it does qualitative equivalence, then an uncharted area is opened. If either subsections (1) or (2) of § 361 are employed to provide equivalence, under what circumstances, and in what manner may subsection (3) be further employed? One court aptly commented:

> ... Section 361 states three illustrative methods for providing adequate protection. Some courts, however, have not looked beyond its trilogy of alternatives. Others have insisted on a showing of indubitable equivalence. These approaches miss the mark: they violate the non-prescriptive character of 361, and may simply exchange one imponderable for another. Indubitable equivalence is not a method; nor does it have substantive content. Indeed something 'indubitable' is more than 'adequate'; 'equivalence' is more than 'protection'; hence, the illustration may eclipse the concept. At best it is a semantic substitute for adequate protection and one with dubious, not in-

dubitable, application to the question of relief from the stay. See, e.g. 2 *Collier on Bankruptcy* § 361.01(1) at 361–4, 361–5 (15th Ed. 1980), *In re Alyucan Interstate Corp.,* 12 B.R. 803, 809 (Bkrtcy.D. Utah, 1981).

It is difficult to determine what Congress intended should constitute adequate protection in the context of a stay during the interim period between the filing of the petition and the confirmation of a plan or liquidation. Apart from inferences to be sought from the use of the indubitable equivalent language, there is no expression of an intent to compensate the secured party for the delay in its potential to realize a profit from a more lucrative investment of the funds which could be generated from a successful sale of the collateral to a third party. Both House and Senate recognized that "[t]here may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the policy of bankruptcy law." S.Rep. No. 95–090 95th Cong. 2d Sess. (1978); Report of Committee of Judiciary H.R. 8200, No. 95–595, 95th Cong. 1st Sess. (1977).

## B. *Adequate Protection and the Undersecured Creditor*

The under-collateralized creditor may contend, since there is no equity cushion, that his position even during the transient stay period requires different treatment. A related question is whether protection of the value of an interest in collateral includes compensation for the temporary restriction of a secured creditor's right to foreclose on and sell the collateral, thereby enabling it to reinvest the proceeds?

Immediately prior to bankruptcy, appellant's right of access to the collateral was prospective in nature. It had a security interest in the property with a right to enforce its claim of lien pursuant to law. However, the simple fact of default does not divest the mortgagor of all interest in the property subject to lien nor does it vest within the mortgagee exclusive ownership of the property. Courts of equity and legislatures have developed many rules and standards relating to defense against forfeitures and foreclosures. There may also be defenses on the merits.

Where bankruptcy is filed, the relatively simple relationship between the secured creditor and the debtor is transformed by the intervention of two major factors. First, the bankruptcy estate has acquired an interest in the collateral. As a party, it is entitled to be heard. In order to be heard, the trustee or debtor-in-possession, and the creditors, require time to evalute their positions. Second, in a Chapter 11, the debtor, in formulating its plan, may require use of the collateral which would then necessitate bringing defaults current as well as assurance against future default. Neither of these intervening factors should logically or equitably alter the nature of the original contract between the debtor and the secured creditor.

Does the fact that the security for the debt is inadequate require or recommend other considerations? It is difficult to perceive why this should be so. Since Crocker is under-collateralized, it is not possible for it to receive interest on the debt itself since even without bankruptcy, it could turn only to its collateral, liquidate it, apply the proceeds to principal, and have a deficiency judgment for the balance.

We do not agree with the court below that there is a negative implication to be derived from § 506(b) which is applicable to § 361. However, § 506(b) does answer a long standing concern that claims for post-bankruptcy interest be circumscribed. See *Adequate Protection and Post-Petition Interest in Chapter 11 Proceedings,* by Niall L. O'Toole, 56 Am.Bankr.L.J. 251 (1982). In any event, we are of the view that intrinsic criteria relating to adequate protection of the collateral were considered by the trial court.

The fact that there is specific provision for time value in the "cram down" provision

of the Code, § 1129(b)(2)(A)(i), (iii) where the rights of the parties are to be finally and permanently fixed, if nothing else, demonstrates that the drafters knew how to provide for it when they considered it requisite.

■ All things considered, it is not possible, without engaging in strained construction, to conclude that it was the intention of Congress, where the debtor is insolvent and the collateral insufficient, that the automatic stay triggers interest, at market rate, on the value of the collateral; nor was it intended that the undersecured creditor be entitled to market rate interest from the date of bankruptcy forward, as a necessary condition for maintaining the stay. A construction more consistent with the language and policy to be served would recognize that it is the value of the collateral which is the focus of protection. Thus, the trial court's decision requiring the debtor to maintain a level of value as security for the debt by providing, during the stay, compensation for depreciation was consistent with the policy and language of § 361(1). There is an extensive analysis providing support for this conclusion in 2 *Collier on Bankruptcy* (15th Ed.) § 362.01, p. 362.13. 35 *et seq.*

## V. THE CONSTITUTIONAL ISSUE

### A.

Crocker points out that the stay deprives it of the collateral or access thereto and that consequently, it is placed in the position of an involuntary lender since its collateral on a defaulted loan is being put to use without compensation. In the latter respect, it states: "The closest analogue is perhaps the law in condemnation." It cites *Seaboard Airline Ry. v. U.S.*, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923) which provided for interest to be paid from the date of the taking of possession of land by the United States before ascertaining the value of the property or paying compensation for it. This analogy assumes that

there has been a taking as was the case in the condemnation proceeding. However, in this case, even with the stay, the situation is as it was before bankruptcy: Crocker was, and is, a creditor who has not as yet foreclosed on its lien. The forum for and procedure for remedy has changed by virtue of the bankruptcy. On this basis, a more appropriate rationale would involve a reconciliation or balancing of Congressional policies on bankruptcy legislation for rehabilitation of debtors on the one hand, and the constitutional protection of property rights of secured creditors, on the other.

■ The power of Congress to legislate on the subject of bankruptcies under Article I, Section 8, Clause 4 of the Constitution is limited by the Fifth Amendment. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).

The *Radford* court held unconstitutional the Frazier-Lemke Act which granted farmers who were unable to obtain the consent necessary for a successful composition under the Bankruptcy Act, several options essentially "compelling the mortgagee to relinquish the property to the mortgagor free of the lien...." Id. at 579, 55 S.Ct. at 858. In the instant case none of the traditional property rights enumerated in *Radford* have been breached. At most they have been temporarily stayed. Justice Brandeis distinguished the impermissible taking of property rights which the Frazier-Lemke Act appeared to sanction from laws which enabled bankruptcy courts to suspend or defer the enforcement of a lien by sale of collateral, citing with approval at p. 583, 55 S.Ct. at 860, *Continental Illinois National Bank & Trust Co. v. Chicago R.I. & P. Ry. Co.,* 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110.

The *Continental* case emphasized that the basic element in the trial court's action was exercise of discretion, which requires, insofar as appellate standard for review is concerned, consideration as to whether there was an abuse of discretion. The court stated:

The injunction here in no way impairs the lien, or disturbs the preferred rank of the pledgees. It does no more than suspend the enforcement of the lien by a sale of the collateral pending further action. It may be, as suggested, that during the period of restraint the collateral *will decline in value;* but the same may be said in respect of an injunction against the sale of real estate upon foreclosure of a mortgage; and such an injunction may issue in an ordinary proceeding in bankruptcy. *Straton v. New,* 283 U.S. 318 [51 S.Ct. 465, 75 L.Ed. 1060], . . . and cases cited. A claim that injurious consequences will result to the pledgee or the mortgagee may not, of course, be disregarded by the district court; but it presents a question addressed not to the power of the court *but to its discretion—a matter not subject to the interference of an appellate court unless such discretion be improvidently exercised.* (Emph. supp.)

The court further stated:

The injunction here goes no further than to delay the enforcement of the contract. It affects only the remedy. As already appears, this court has upheld the power of a court of bankruptcy to stay the enforcement of a remedy (*In re Jersey Island Packing Co.,* 138 F. 625 (9th Cir. 1905)), under a real estate mortgage; and the remedy under a pledge, so far as constitutional power is concerned, presents a situation strictly analogous in character.

It should be remembered that the exercise of such discretion in the course of dealing with the automatic stay in this case involved a transitory situation. There was an expressly provisional treatment of the stay in order to preserve the status quo and balance the interests of the parties. *Radford* and *Murel* dealt with what they conceived to be situations involving a permanent and fixed transformation of the rights of the parties such as is contemplated by the cram down provisions of 11 U.S.C.

§ 1129. Where there is such a transformation, it is necessary to examine whether the end result provides a fair and equivalent exchange for the creditor. However, the setting under § 1129 differs considerably from that under § 362. This was recognized implicitly in *Murel* and expressly in *Radford* which, adopting the foregoing language from *Continental Illinois* further stated, 295 U.S. at page 583, 55 S.Ct. at page 860:

No Bankruptcy Act had undertaken to modify in the interest of either the debtor or other creditors any substantive right of the holder of a mortgage valid under federal law. Supervening bankruptcy had, in the interests of other creditors, affected in some respects the remedies available to lienholders.

■ *Murel* recognized that the rights of the secured creditor with respect to the collateral might differ during the stay period from the treatment to be accorded that property interest permanently as a result of a plan. Thus, it was stated, at page 943:

No doubt less will be required to hold up the suit for a short time until the debtor shall have a chance to prepare; much depends upon how long he has had already, and upon how much more he demands.

Subsequent cases in which Judge Hand participated confirm that compensation for temporary delay of the right to enforce a lien is not absolutely necessary. See *In re New York, N.H. & H.R. Co.,* 102 F.2d 923 (2d Cir.1939). In *Lincoln-Alliance Bank & Trust Co. v. Dye,* 108 F.2d 38 (2d Cir.1939) the court, which included Judge Hand, affirmed the trial court which had prohibited the secured creditor (who was apparently undercollateralized) from foreclosing a mortgage on a ship three weeks after the commencement of the proceedings. The court held that "[i]t lay within [the trial court's] discretion to give the trustee a little more time in which to turn around and try such expedients as might seem plausible, even at the expense of the mortgagee."

*Lincoln-Alliance, supra,* at 38. The appellate court decided the case eight months after the proceeding had commenced and advised the trial court that unless there had been a radical change in the prospects at that point, the trial court should not detain the mortgagee any longer. Six months later the creditor appealed again and was granted relief. *Lincoln-Alliance Bank & Trust Co. v. Dye,* 115 F.2d 234 (2d Cir.1940).

The determination of what will constitute adequate protection during the interim period between petition and plan involves a balancing of factors. It is intended to provide a measure of protection against, rather than compensate for, risk. As stated in *Alyucan, supra:*

> "In short, the adequate protection vouchsafed creditors is interim protection, designed not as a purgative of all creditor ailments, but as a palliative of the worst: reorganization, dismissal, or liquidation will provide the final relief. During this interim, the policies favoring rehabilitation and the benefits derived from the stay should not be lightly discarded." *In re Alyucan Interstate Corp.,* 12 B.R. 803 (Bkrtcy.Utah, 1981).

### B.

As further indication of the concern for balance, the Code, in 11 U.S.C. § 507(b) has added an additional element of safeguard by providing that

> If the trustee under §§ 362, 363 or 364 of this title, provides adequate protection of the interests of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section, arising from the stay of an action against such property under § 362 of this Title, ... then such creditor's claim under such subsection shall have priority over every other claim under such subsection.

Thus, the presumably adequately protected creditor is granted an additional margin of protection in the form of a super priority. This extra degree of margin is ahead even of the expenses of a superseding liquidation, see 3 *Collier on Bankruptcy* (15th Ed.) § 507.05. It is interesting to observe that while this safeguard is provided in the event that the debtor's promise of adequate protection fails, § 361 forbids that such a priority be offered by the debtor in the first instance. See also *In re Callister,* 15 B.R. 521 (Bkrtcy.Utah, 1981) where the creditor was allowed a super priority with respect to certain aspects of his claim and denied such as to others, and *In re Marine Optical, Inc.,* 10 B.R. 893 (Bkrtcy.App. 1st Cir.1981) which described § 507(b) as "a statutory failsafe system in recognition of the ultimate reality that protection previously determined the 'indubitable equivalent' ... may later prove inadequate." The inadequacy, presumably, would be measured in terms of diminution in value or loss of collateral.

### C.

Although the primary focus of *Radford,* was the modification of the substantive rights of the mortgagee, after prompt passage of the amendments to the Frazier-Lemke Act in response thereof, the Supreme Court concluded that the Act made "no unreasonable modification of the mortgagee's rights". *Wright v. Vinton Branch of the Mountain Trust Bank,* 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937). As stated in 2 *Collier on Bankruptcy,* ¶ 362.01, p. 362–13 (15th Ed.1982):

> Due to the relatively modest differences between the two acts, it must be concluded that *Wright v. Vinton Branch* substantially limited *Radford* as a statement concerning the constitutional rights of secured creditors.

> Two subsequent cases have additionally limited *Radford.* In *Wright v. Union Central Life Insurance Co.,* 304 U.S. [502], 503, 58 S.Ct. 1025 [1027, 82 L.Ed. 1490] (1938) the constitutionality of an extension of the period of redemption was upheld.

The *Wright* case cited above came before the court again on the issue of the debtor's right to redeem at appraised value: *Wright v. Union Central Life,* 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1940). Justice Douglas stated:

Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property... There is no constitutional claim of the creditor to more than that.

## VI. DISCUSSION OF CASE LAW

Consistent with the view that § 362(d) permits the court, in the exercise of sound judicial discretion, to fashion interim decrees providing safeguards which will balance the interests of the secured creditor with those of the debtor, and presumably, other classes of creditors, the decisions which have been rendered to date interpreting adequate protection, demonstrate a variety of approaches. *In re Pine Lake Village Apartments Co.,* 19 B.R. 819, 8 B.C.D. 1402 (Bkrtcy.S.D.N.Y.1982) concluded that:

If the value of the collateral is not depreciating during the stay, or if the loss is not attributable to the stay, the debtor should not be required to furnish the creditor with any further protection for his lien, especially in the light of the legislative history and the provisions of the Code where the express purpose is concerned with the preservation of the collateral securing the creditor's claim.

*In re El Patio,* 6 B.R. 518, 522 (Bkrtcy.C. D.Cal.1980) can be read consistently with *Pine Lake* in that it required payment of accruing taxes and interest in an amount 2% per annum of the secured claim (as did *Pine Lake* ), stating:

It would be inequitable for the bank to bear the full entrepreneurial burden beyond the period for which it bargained.

Cases which may be read as being opposed to the view that adequate protection encompasses, primarily, maintenance of val-

ue have been decided. In *In re Anchorage Boat Sales,* 4 B.R. 635 (Bkrtcy.E.D.N.Y. 1980) the court, citing *Murel,* stated that the value of the collateral had a time value and that, under the circumstances, because of the time gap between the § 362(d) hearing and the confirmation hearing, the secured creditor would not receive the indubitable equivalent of his collateral "unless relief from the stay is granted." The foregoing ruling actually was an abstract statement since it was clear that the basic holding of the court was "that there is no possibility that this debtor will be able to successfully reorganize." It therefore lifted the automatic stay.

Another case addressing itself in similar fashion to the problem was *In re Monroe Park,* 17 B.R. 934 (D.C.D.Del.1982). This case involved an appeal from the decision of the bankruptcy court which found, in effect, that there was no equity cushion and therefore lifted the stay in favor of the mortgagee. The district court, on appeal, stated it would affirm the bankruptcy court. It pointed out, in response to debtor's argument on appeal, that the bankruptcy court's allegedly erroneous requirement of adequate protection for the entire amount of the debt owing rather than for the amount of the debt actually secured by collateral at the time the petition was filed was raised for the first time on appeal. While troubled with this breach of appellate procedure, the court nevertheless went on to consider, in the abstract, the question of whether indubitable equivalent could include the accrued interest in security value, stating that "if Metropolitan had been allowed to foreclose on the mortgaged property at the time the bankruptcy petition was filed, they could have reinvested the money gained through foreclosure at current interest rates, after a judgment in its favor was entered and executed upon."

The foregoing is a hypothesis which, as previously discussed, encompasses an unwarranted premise in that it equates the filing of a bankruptcy petition with a judg-

ment of foreclosure and sale thereon. It disregards, moreover, the discretionary power of the bankruptcy court to make provisional rulings deferring the mortgagee's remedy. In any event, the court, recognizing that flexibility is proper in considering protection, stated:

> It may be that compensation for unpaid accruing interest and charges during the pendency is not necessary in all cases. See *In re B B T* 11 B.R. 224, 232 (Bkrtcy. Dist.Nev.1981). Indeed, adequate protection is a flexible concept which requires a court to make decisions on a case by case basis, after full consideration of the peculiar characteristics common to each proceeding. See *In re San Clemente Estates,* 5 B.R. 605, 609 (Bkrtcy.S.D.Cal. 1980). In this case, however, where a plan of reorganization was not even filed until nine months after the reorganization proceeding was first commenced, and interest charges were accruing at a minimum of $36,000 per month, it was not unreasonable to require Monroe Park to offer some form of compensation for Metropolitan's loss of use of its money while the stay was imposed. *In re Monroe Park, supra,* at p. 940.

It thereby concedes that interest or time value of liquidated collateral is not a *sine qua non* of adequate protection for the undersecured creditor. See also *In re Nixon Machinery Co.* 9 B.R. 316, 317 (Bkrtcy.E.D. Tenn.1981); *In re Williams,* 7 B.R. 234, 237 (Bkrtcy.C.D.Ga.1980) and *In re Rogers Development Corp.,* 2 B.R. 679, 685 (Bkrtcy.E. D.Va.1980). There are other cases involving adequate protection which are primarily focused on whether or not there is sufficient equity cushion; see *In the Matter of Commonwealth of Pennsylvania State Employees Retirement Fund v. Roan,* 14 B.R. 542 (D.C.E.D.Pa.1981); *In re 5-Leaf Clover Corp.,* 6 B.R. 463 (Bkrtcy.S.D.W.Va.1980); *In re Virginia Foundry,* 9 B.R. 493 (Dist.Ct. W.D.Va.1981), which dealt with whether market rate interest should be furnished under a plan.

The issue of time value was specifically dealt with in the case of *In re South Village, Inc.,* 25 B.R. 987, 9 B.C.D. 1332 (Bkrtcy.Utah, 1982). The secured creditor contended that if allowed to foreclose and sell a shopping mall, it could reinvest the proceeds and be paid market rate interest which it termed "the use value of its money" or "opportunity cost". The case, after an extensive review of legislative history, case authority and comparison of § 361 with other provisions of the Code, concluded that the debtor need not pay interest to compensate the secured creditor for its opportunity cost in order to supply adequate protection.

## CONCLUSION

The policy of the Code, in litigation involving the automatic stay, particularly in a Chapter 11 or reorganization setting, is to place matters in a holding pattern so as to permit an opportunity, where there are prospects for survival, for time to allow the reorganization to develop for the benefit of the debtor and its creditors. A temporary balance is thereby struck which defers access of the secured creditor to the collateral but provides for maintenance of its value. This period of time is not illimitable and should be measured by what is reasonable under the circumstances. The trial court in the instant case recognized this, pointing out that the creditor was not without recourse in bringing to its attention the issue as to how long the stay, conditioned as it was, should subsist.

The language of § 361 and its legislative history support the conclusion that it was the intention of Congress to provide a balance whereby deferral of recourse to collateral would be attended by provision for ensuring maintenance of its value. This balance does not require an additional increment for market rate interest on the value of such collateral.

The court's discretion was not abused. The judgment is AFFIRMED.

HUGHES, Bankruptcy Judge, dissenting.

The majority opinion concludes that the trial court did not abuse its discretion in

refusing to permit any part of debtor's monthly payments to the bank to be applied as proposed by the debtor, namely as interest on the value of the collateral. Believing that the trial court used an erroneous legal standard, I respectfully dissent.

## I

The essential question raised by this appeal is whether undersecured creditors who are stayed from repossessing their collateral are entitled, under the concept of adequate protection, to compensation for the delay. Appellant contends that compensation is payable and advances the theory that adequate protection was intended by Congress to protect interests in collateral against decreases in present value.

To better understand what is before us, it may be helpful to state what is not.

*Means of providing adequate protection.* This question is not before us because the debtor is paying $1770 a month to the creditor. Periodic payment is expressly contemplated by the statute as a means of providing adequate protection 11 U.S.C. § 361(1).

*Present value of the creditor's interest in collateral that is worth more than the debt (oversecured creditor).* In such instances, the present value is protected to the extent of contract interest. 11 U.S.C. § 506(b). (Thus a claim of $50,000 secured by collateral worth $200,000 earns interest monthly until the debt is satisfied, and the interest earned also is secured by the collateral). In this appeal, the bank is undersecured, not oversecured.

*Stay of Foreclosure or Repossession.* The bank does not question the statutory or constitutional power of the court to protect the debtor's possession and use of the collateral, nor does it question the court's exercise of discretion in this regard.

*Adequate protection of the bank's claim.* Only protection of the bank's interest in the collateral is before us. Claims are not entitled to adequate protection. 11 U.S.C. § 361.

For this reason, 11 U.S.C. § 506(b) which, by negative implication, denies post-bankruptcy interest on undersecured claims is not dispositive.

*Market Rate of interest.* The bank stated at oral argument that it did not insist on this measure of compensation.

## II

### A

The concept of adequate protection defies easy definition. Indeed, the Congress pointedly declined to define it. More importantly, the term invites ambiguity because it embraces both substance and process.

Adequate protection is discussed in 11 U.S.C. § 361 primarily in terms of process. Thus, it "may be provided by ... periodic cash payments ... additional or replacement lien ... or such other relief..." The only limitation is that it may not be provided by "compensation allowable ... as an administrative expense..." 11 U.S.C. § 361(3). But the statute also alludes to the substance of adequate protection, i.e., what is entitled to such protection.

In this regard, the statute expressly protects a party's interest in property, i.e., "an interest of an entity in property", as distinguished from an interest in a claim for money. Further, it expressly protects that interest against a decrease in value, 11 U.S.C. § 361(1), (2), and insures "the realization by such entity of the indubitable equivalent" of that interest. 11 U.S.C. § 361(3).

The question posed by this appeal does not concern process. If an interest is entitled to protection against a decrease in value, that protection may be provided by periodic cash payments, additional liens or other relief. In fact, the process of adequate protection has been supplied in this case by voluntary periodic payments.

The question posed by this appeal concerns substance: is present value entitled to protection?

## B

While adequate protection is not statutorily defined, examples are provided in section 361 and discussion of adequate protection is found in the legislative notes:

Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, the section recognizes the availability of alternative means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, *the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.* (Emphasis added.)

House Report No. 95–595, 95th Cong. 1st Sess., 338–40 (1977), Senate Report No. 95–989, 95th Cong. 2nd Sess., 49, 53–54 (1978), U.S.Code Cong. & Admin.News, pp. 6294–96.

Based on that statement of congressional purpose, one court has said that adequate protection requires that a secured party be afforded "the economic equivalent of the benefit of its bargain." *In re Virginia Foundry Co., Inc.,* 9 B.R. 493, 497 (Dist.Ct. W.D.Va.1981).

The same court also pointed out that adequate protection is not new to bankruptcy statutory law:

The term is found in the Bankruptcy Act of 1898, as amended . . . under the so called "cram-down" provisions of § 216(7) of Chapter X . . . and of § 461(11) of Chapter XII . . . It was likewise found in subsection (b)(5) of section 77B, the predecessor to Chapter X.

Id., at 497.

As used in prior law, adequate protection was interpreted by the courts. Thus, Judge Learned Hand said of the term in *In re Murel Holding Corporation,* 75 F.2d 941 (2d Cir.1935) at 942:

In construing so vague a grant, we are to remember not only the underlying pur-poses of the section, but the constitutional limitations to which it must conform. It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

Judge Hand's "indubitable equivalence" was placed in Section 361(3) as a measure of adequate protection under the Code.

Thus, we know that the Code draftsmen intended adequate protection "to insure that the secured creditor receives in value essentially what he bargained for," or as one court said, "the economic equivalent of the benefit of its bargain." We also know that the term came to us from the former Act, where it was construed as requiring that protection of the secured party's interest be "completely compensatory" or the "most indubitable equivalence."

Nevertheless the trial court reasoned that *Murel Holding Corporation* "may be precedent for issues arising upon confirmation under § 1129(b)(2)(A)(i)(II), but not to require interest to be paid to an under-secured creditor for being temporarily deprived of possession or use of its collateral."

It is true that adequate protection was used in Judge Hand's day in reference to confirmation of plans. But it is also true that Congress has elected to expand the use and application of adequate protection to other contexts—such as in the automatic stay.

From the foregoing, I am persuaded that adequate protection contemplates not only protection against decrease in value, 11 U.S.C. § 361(1), (2), but assurance of the

economic equivalent of the bargain struck. 11 U.S.C. § 361(3).

## III

### A

The bank's formal argument centered on the present value concept, which it drew from confirmation cram down provisions of Chapters 11 and 13. These in turn drew from Judge Hand's construction of adequate protection in *Murel Holding Corporation,* supra, and that case addressed adequate protection as a standard for confirming a plan of reorganization. In a sense, then, the present value confirmation provisions of Chapters 11 and 13 codify Judge Hand's construction of adequate protection. See generally, Gordanier, *Adequate Protection,* 54 Am.Bkr.L.J. 299, 316–17 (1980).

Present value as a term is not expressly employed in section 1129(b)(2)(A), but legislative notes explain that a secured creditor affected by cram down "... must receive present or deferred payments with a present value equal to the allowed secured claim..." 124 Cong.Rec. S17,421 (daily ed. Oct. 6, 1978).

Likewise, a Code draftsman refers to the present value test in stating that deferred payments to secured creditors under a plan "must have a present value, as of the effective date of the plan, generally equal to the present value of the collateral..." Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code,* 53 Am.Bankr.L.J. 133 (1979), at p. 155.

The legislative notes emphasize the present value of deferred payment, whereas the bank's analysis is concerned with the present value of its collateral. They are in agreement that the present value of the collateral should equal the present value of deferred payment. Either way, present value focuses attention on the time-value of money or other property. Thus in arguing that "protection of the present value" is "an essential must of 'adequate protection'," ap-pellant is arguing that adequate protection entitles it to compensation for delayed enjoyment of its rights in the collateral.

### B

The bank argues that *"[d]elay* no less than *depreciation* results in, to use the language of § 361, a 'decrease in the value of [the secured creditor's] interest in [its collateral]'."* Implicit in the bank's argument is the contention that it bargained not only for a security interest in the debtor's property, but for the right to enforce that interest upon the debtor's default. As a consequence, it argues, the debtor should be required to pay interest to compensate for its use (and the bank's loss of use) of the property.

It is difficult to refute this argument when viewed against the legislative notes on adequate protection that speak of not depriving secured creditors of the benefit of their bargain and insuring that, if denied the bargain in kind, they receive in value essentially what they bargained for.

There can be no doubt that the right to foreclose upon default rather than at a subsequent date has economic value, or as Judge Hand put it, that "payment ten years hence is not generally the equivalent of payment now." *In re Murel Holding Corporation,* supra. The economic value of that right is a function of the use of property. If the property is money or its equivalent the time-value is thought of as interest, if personal or real property as rent. Where foreclosure is delayed, the time-value is denied to the creditor and enjoyed by the debtor. Thus the right to use property has economic value and the question is whether, as a condition for delaying a foreclosure that the creditor is otherwise entitled to by its bargain, the debtor is obliged to pay that value to the secured creditor.

Paraphrasing Judge Hand, I see no reason to suppose that Congress intended to deprive the bank of that right for the benefit of the bankruptcy estate unless the bank

is compensated. I thus conclude that adequate protection entitles the bank to "the economic equivalent" of the right to foreclose, which is one of the benefits it bargained for. *In re Virginia Foundry Co., Inc.,* supra.

### IV

For the foregoing reasons, I believe that the trial court erred in holding that no interest is due and that its refusal to permit any part of the periodic payments to be treated as interest was an abuse of discretion.

I would reverse and remand for purposes of determining the appropriate amount of compensation.