### In re ROLANCO, INC., Debtor.

**Bankruptcy No. 83–00143(SE).**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

Aug. 2, 1984.

Fred E. Arnold, St. Louis, Mo., for debtor.

Dwight Crader, Sikeston, Mo., for movant.

Paul H. Berens, Cape Girardeau, Mo.,

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

John Hancock Mutual Life Insurance Company (Movant) seeks, by motion, relief from the automatic stays under 11 U.S.C. § 362(a) in order to foreclose its first mortgage on a 1350-acre farm belonging to the Debtor, Rolanco, Inc. Alternatively, Movant seeks an order by this Court restraining Debtor from using the farm until the Debtor affords Movant "adequate protection" of its security interest in the farm of monthly cash payments equal, at least, to the interest accruing monthly on the indebtedness owed the Movant. This motion was referred to the undersigned United States Magistrate pursuant to 28 U.S.C. § 636(b) and Rule 27 of the Local Rules of the United States District Court, Eastern District of Missouri. Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of a final order disposing of this matter.[1]

The facts underlying the motion are these:

1. On July 31, 1979, Debtor executed and delivered to Movant its promissory note in the face amount of $1,150,000 together with interest at a rate of 10-¼ per cent and a mortgage deed covering the 1350-acre farm in question. This farm is located in Saline County, Illinois. The promissory note provides for annual installment payments of the interest accrued to date plus a principal payment of $23,000. Each installment is due on July 1st of each year until the year 1998, when the entire unpaid principal balance and any unpaid interest becomes due.

2. Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on April 25, 1983. On July 1, 1983, Debtor failed to pay the installment due on the aforesaid note and has been in default since.

3. At the hearing, Movant offered the testimony of Ben Herron, an appraiser who regularly makes appraisals for the Movant. Mr. Herron testified that, as of October 28, 1983, the date of the hearing, Debtor owed Movant the total sum of $1,249,181.20, including accrued interest and advances for unpaid real estate taxes. Debtor did not offer any evidence to the contrary nor did it dispute the accuracy of this figure.

4. Mr. Herron also expressed his opinion on the fair market value of the farm. Based on the sales of farms in the area which he felt were comparable to the instant one and his inspection of the subject property, Mr. Herron valued Debtor's farm at $712.96 per acre for a total of $962,500.00.

5. Movant also introduced the testimony of Don Welch, another appraiser. Mr. Welch, based also on sales of farms thought comparable by him to the instant one and his inspection of this property, valued Debtor's farm at $826.59 per acre for a total of $1,115,900.00.

6. Debtor, in turn, presented the testimony of its appraiser, John David Olson. Based on another sale of a farm which he felt was comparable to the Debtor's property, Mr. Olson valued this farm at $1,740,000.00. Mr. Olson had inspected the property in January, 1983, and had driven by it again in September of 1983.

7. Burt Rowe, President of the Debtor and, along with his wife, the sole shareholder of the Debtor, testified that the Debtor's farm was worth between $1,740,000 and $2,000,000. He also projected that the farm, if planted in soybeans, would yield between $105 to $175 per acre after deducting production expenses or a total of between $115,000 and $192,500. Because of this, he felt that the farm was an integral part of the consolidated plan of reorganization for this Debtor and its affiliated debtors. On cross examination, Mr. Rowe did concede that the farm had always operated at a loss in past years, but maintained

---

1. Movant's attorney, David Dolan, personally advised the Court that he, on behalf of his client, consented to such entry. Fred Arnold, attorney for the Debtor, advised a member of this magistrate's staff that he, also on behalf of his client, consented to such entry.

'that by the use of "custom farming" (subcontracting out the various components of cultivating the crop), that this farm would have a better year in 1984.

## FINDINGS AND CONCLUSIONS

11 U.S.C. § 362(d) provides that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

### Equity

The record before this Court discloses three different opinions on the value of the farm property at hand:

(1) appraiser Herron valued the property at $962,500.00;

(2) appraiser Welch valued it at $1,115,900, and

(3) appraiser Olson valued the property at $1,740,000.

Since the indebtedness encumbering this property at the time of the hearing exceeded 1.2 million dollars and currently is approximately 1.4 million dollars, Debtor has equity in this property only if appraiser Olson's valuation of $1,740,000 is accurate. After considering the bases of this appraisal and the others, the Court concludes that it is not.

Appraiser Olson based his valuation on a comparable sale occurring in 1981. This Court is aware from these and other proceedings that the market for farm real estate in Southern Illinois as well as other parts of the country has declined as much as 20 to 25 per cent since 1981. Thus, a sale occurring in 1981 is not very comparable or relevant to the valuation of the instant property, unless that decline is taken into consideration.

The comparable sales used by appraisers Herron and Welch are more recent than 1981 and, therefore, more reflective of current values. However, appraiser Herron chose as his most comparable the sale of a farm for $827.07 per acre and then valued Debtor's farm at more than $100 *less* per acre because of its allegedly poorer soil. Appraiser Welch, on the other hand, chose as his most comparable a sale of a farm for $1,080 per acre, and then adjusted the average value per acre of Debtor's farm downward also because of its allegedly poorer soil.

It is unnecessary for this Court to determine which of these valuations is more accurate. The only relevant issue is whether the Debtor has any equity in the subject property and using either appraiser's valuation, Debtor clearly has no equity in this property. When an allowance is considered for the decline in farm values, even Olson's appraisal would indicate either no equity or an inconsequential amount of equity.

### Necessity to an Effective Reorganization

Burt Rowe projected that the subject farm could produce as much as $175,000 after production expenses from its 1984 crop. Appraiser Herron projected gross revenues of $209,300 for this same farm. Appraiser Welch, although not explicitly estimating total revenues, stated one-third (⅓) share of the gross revenues to be $75,000 to $80,000, which yields gross revenues of $225,000 to $240,000.

The annual payment required of the Debtor in the promissory note held by Movant is $23,000 plus the annual accrued interest. Using a principal balance of $1,200,000, the annual interest at 10–¼ per cent per annum is approximately $123,000 for a total installment payment of $146,000.

Since the farm appears reasonably likely to produce net revenues in excess of the amount required to service the debt owed Movant and to create funds to pay the unsecured creditors of this Debtor and its affiliated debtors, the property is necessary

to an effective reorganization by the Debtor.

*Adequate Protection*

Movant also argues that it is entitled to adequate protection in the form of compensation for at least the interest payments which would otherwise be accruing on its indebtedness. In other words, Movant is asking for compensation to cover the loss it sustains from being unable to liquidate its collateral and to reinvest the proceeds to produce income. There was no evidence that the farm had actually decreased in value since the inception of this proceeding or that such depreciation is likely to occur in the near future.

While some courts have indeed adopted this notion, *see In re Monroe Park,* 17 B.R. 934 (D.Del.1982); *In re Virginia Foundry,* 9 B.R. 493 (W.D.Va.1981); *In the Matter of Anchorage Boat Sales, Inc.,* 4 B.R. 635 (Bkrtcy.S.D.N.Y.1980), this Court has previously rejected this approach to "adequate protection" (*see* this Court's opinion entered on May 16, 1984, on the motion for relief from stay filed by the Mutual Life Insurance Company of New York). The Court still believes that Congress did not intend such a requirement in its conceptualization of "adequate protection", *see In re Saypol,* 31 B.R. 796 (Bkrtcy.S.D.N.Y.1983); *In re American Mariner Industries, Inc.,* 27 B.R. 1004 (Bkrtcy.App. 9th Cir.1983); *In re South Village,* 25 B.R. 987 (Bkrtcy.D. Utah 1982).

However, as this Court previously noted in its May 16, 1984 opinion, basic principles of equity are incorporated into the concept of adequate protection, *see* 2 *Collier on Bankruptcy,* pp. 361–12 and 361–13 (15th Ed.). Here, Movant has not received, since the filing of the Chapter 11 petition herein, any form of debt service or compensation for the Debtor's use of its collateral, valued in excess of 1 million dollars. As stated in its May 16, 1984 opinion, this Court believes that Movant is entitled to compensation equal to the rental value of the land in question.

At the hearing, there was evidence that, based on the projected crop yields of this property, a landlord's share, premised on a ⅓rd–⅔rds sharecrop arrangement, would yield between $70,000 and $80,000. Thus, Debtor should be required to pay Movant the sum of $75,000 for its use of the property during the 1984 growing season.

CONCLUSION

On May 15, 1984, this Court, because of the unintended lapse of the automatic stays under 11 U.S.C. § 362(a), entered its order enjoining Movant from foreclosing its mortgage upon the property and reimposing the stays under 11 U.S.C. § 362(a), 43 B.R. 150. By separate order, this Court will now continue to enjoin the Movant from foreclosing its mortgage and to maintain the automatic stays if and only if:

(1) Debtor shall pay to Movant the sum of $75,000 not later than November 30, 1984, to be applied to the debt owed Movant;

(2) Debtor shall pay to Movant such further amounts as the Court may order from time to time;

(3) Debtor shall pay all real estate taxes when due and pay, if any, all taxes in arrears within ninety (90) days of this opinion, and shall keep and maintain all improvements on the property in good repair and shall maintain adequate insurance coverage on said improvements naming Movant as loss payee; and

(4) Debtor shall permit Movant's representatives to inspect the subject property at reasonable times.

If Debtor should fail to comply with any of the foregoing (except maintenance of all improvements on the property in good repair), the automatic stays shall be lifted by this Court and the foregoing injunction entered by this Court on May 15, 1984, shall be dissolved without further hearing on the issues litigated herein.